**STATE of Iowa, Appellee,**

v.

**Michael L. HOOD, Appellant.**

**No. 69175.**

Supreme Court of Iowa.

March 14, 1984.

Charles L. Harrington, Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Teresa Baustian, James W. Ramey and Selwyn Dallyn, Asst. Attys. Gen., and Thomas F. Kintigh, County Atty., for appellee.

McGIVERIN, Justice.

This is a companion case to *State v. Snodgrass*, 346 N.W.2d 472 (Iowa 1984), which we file today. Both cases involve the same facts and same joint trial. Defendant Michael L. Hood contends, as did his codefendant Sherryl Snodgrass, that the trial court abused its discretion under Iowa R.Crim.P. 6(4)(b) in refusing to sever the trials of these two codefendants, thereby resulting in a denial of each defendant's

due process right to a fair trial. In *Snodgrass* we determine the court did not abuse its discretion in denying Snodgrass' motions to sever her trial. For the reasons stated in divisions I and II of that opinion, we conclude that Hood's similar motions and contentions here based on alleged general prejudice resulting from the joint trial also were properly overruled and are without merit. For the reasons stated in division III–B of *Snodgrass,* we likewise find no merit in his claim of prejudice in the reduction by half the number of peremptory challenges and strikes he received pursuant to former Iowa R.Crim.P. 17(12) (1982) during jury selection.

Hood also asserts several other contentions in which we find no reversible error. Accordingly, we affirm the court's judgment of conviction after jury trial of Hood for first-degree murder in violation of Iowa Code sections 707.1–.2 (1981).

The basic facts and testimony concerning the killing of the victim, Gregory Snodgrass, are stated in *Snodgrass* and will not be repeated here.

In addition to the issues previously mentioned, Hood contends his conviction should be reversed because the trial court: 1) permitted Snodgrass to present evidence and to cross-examine Hood in regard to the reason he and Snodgrass left Iowa after the killing without notifying Iowa police authorities; 2) permitted Snodgrass to cross-examine witnesses about Hood's possession of firearms; and 3) overruled his relevancy objection to expert testimony concerning the evaluation of Snodgrass as possessing a "passive-dependent" personality.

■ I. *Evidence explaining why codefendants did not notify Iowa authorities of the death.* At the close of the State's case, Hood was allowed to present his evidence. He chose to testify. He stated on direct exam that after the shooting of Gregory by Sherryl, and after he had stabbed Gregory several times, Sherryl wanted to call the police. However, he would not allow her to do so because he was scared and did not know what to do.

Thus he said he took Gregory's body back to Missouri because he believed some friends there would know what to do with it. Hood and Sherryl did not notify Iowa authorities of the killing.

Hood was on parole from a Missouri felony conviction for arson at the time of the Gregory Snodgrass killing in September 1981 in Ottumwa, Iowa. Conditions of the parole were that Hood not leave the State of Missouri and not carry firearms.

During the trial Sherryl testified that Hood told her he shot Gregory in self defense but that they could not call the police because he violated parole for even coming to Iowa. She acquiesced and, therefore, Iowa authorities were not notified.

Hood contends the court erred in permitting Sherryl to present evidence as to his prior oral statement to police authorities and to cross-examine him with regard to the parole violations by being in Iowa and the conviction from which parole had been granted. He says such evidence was improper impeachment, irrelevant and prejudicial.

The court ruled the prior statement to police was admissible as a prior inconsistent statement because in it Hood admitted shooting Gregory. The court specifically considered the fact that in the statement Hood disclosed that he returned to Missouri on the night of September 20 because he was in violation of parole by being in Iowa. He then admitted he did not contact Iowa law enforcement officers because of his parole status, whereas on direct exam at trial he claimed panic and fear were his motivations. The court further found that the fact Hood had been convicted and was on parole therefrom was relevant to explain the motivation of both defendants as to why the local officers were not called, and, instead, the body was transported to Missouri. It thus was an integral part of the story of the crime. No impeachment instruction was given the jury based on the felony conviction or on any other ground.

We stated in *State v. Oppelt,* 329 N.W.2d 17, 19 (Iowa 1983), "When acts are so close-

ly related in time and place and so intimately connected that they form a continuous transaction, the whole transaction may be shown to complete the story of what happened."

Also, because the State's theory was that Sherryl was an accomplice of Hood, any evidence relevant to a nonincriminating motivation for Hood's departure from Iowa was also defensive for Sherryl. The credibility of both the self defense claim by Hood and the defense of a third person claim by Sherryl was bolstered by an explanation of the codefendants' conduct subsequent to the shooting in going to Missouri rather than contacting Iowa law officers. The evidence would tend to negate an inference the defendants fled from Iowa to avoid or retard prosecution because of guilt in connection with the death of Gregory.

The relevancy of the evidence was established sufficiently to place it within the discretion of the court to admit it. We conclude the court did not abuse its discretion in admitting such evidence, and overruling the objections urged, as to Hood's status as a Missouri parolee, and, thus, necessarily his prior conviction from which parole was allowed.

II. *Evidence concerning Hood's ownership of firearms.* Hood asserts the court erred in overruling his relevancy objection to evidence elicited on cross-examination by Sherryl of three witnesses to the effect that Hood possessed weapons other than the one used to kill Gregory.

The State called Beverly Hood, defendant's mother. She testified on direct exam that defendant had taken a shotgun, which was later identified as the one that killed Gregory, with him when he left her home on the day Gregory died. She did not know of any other weapons he took with him. On cross-examination, Sherryl brought out that defendant kept other firearms in his bedroom at his mother's house and they were available to him.

During trial Sherryl testified and other evidence showed that she and Hood travelled to Iowa, after leaving the house of Hood's mother in Missouri, with three loaded guns—a .30 caliber carbine, a 16-gauge sawed off shotgun, and .357 revolver. She further testified in substance that he usually had guns.

Although both codefendants claimed the killing was justified, each testified the other actually fired the shotgun that killed Gregory. Sherryl offered evidence that Hood was knowledgeable and experienced with firearms. The desired inference would be that Hood shot Gregory.

During cross-examination by Sherryl of two other witnesses for the State, she was allowed to elicit over Hood's objection that he had indicated to one witness he normally possessed weapons and the other witness testified Hood had a pistol with him on a particular occasion prior to the killing.

"The test of relevancy is whether the evidence offered would render the desired inference more probable than it would be without such evidence." *State v. Chadwick*, 328 N.W.2d 913, 917 (Iowa 1983). Also no prejudice issues from admission of evidence where substantially the same evidence is elsewhere in the record without objection. *State v. Holmes*, 325 N.W.2d 114, 116 (Iowa 1982). The evidence of which Hood complains did bear to some extent on Sherryl's desired inference. We conclude, however, that no reversible error occurred here due to the evidence otherwise properly in the record as to Hood's usual access to and possession of firearms.

III. *Relevancy of Snodgrass' personality evidence.* Defendant contends the trial court erred in overruling his relevancy objection to the introduction by Sherryl of expert testimony concerning an evaluation of her as possessing a "passive-dependent" personality. The expert testified that a "passive-dependent" individual will allow others to assume responsibility and will act in a manner to maintain such a dependent relationship. Sherryl offered this testimony to negate evidence that she had the requisite intent to kill her husband. Iowa Code section 707.2(1) requires the State to prove on a first-degree murder charge that a defendant "willfully, deliber-

ately, and with premeditation kills another person." In substance she sought to show it was unlikely she would commit such an act. In addition, she sought to show that her actions, especially those subsequent to the killing, did not warrant an inference that she intended to kill her husband but had only been following the direction of someone else.

Hood claims Snodgrass' personality was not relevant to any issue and should have been excluded under the relevancy rule barring proof of a person's character as evidence of conduct on a particular occasion. E. Cleary, *McCormick on Evidence*, § 188 (2d ed. 1972). A significant exception to this general rule, however, has been recognized by this court.

> A defendant may introduce evidence of his good character for the traits involved in an offense as bearing on the probability he [or she] did or did not commit the crime charged. This may be done by proof of his real character for such traits or his general reputation for them.

*State v. Buckner*, 214 N.W.2d 164, 166–67 (Iowa 1974). *See also State v. Hamann*, 285 N.W.2d 180, 184 (Iowa 1979); *State v. Hobbs*, 172 N.W.2d 268, 271 (Iowa 1969); E. Cleary, *McCormick on Evidence*, § 191 (2d ed. 1972). *Compare* Iowa R.Evid. 404(a)(1), 405(a).[1] The expert's opinion testimony on Snodgrass' unique character trait comes within this exception because it bears on the probability of her committing the crime charged.

 Also, when it becomes material to show the particular intent which inspired an act, the defendant may also offer any evidence which tends to negate the existence of the intent required for the commission of the offense charged. C. Torcia, *Wharton's Criminal Evidence* § 168.

Evidence of her personality or character bearing on her inherent ability to form the specific intent necessary for first-degree murder was relevant and thus properly permitted before the jury. We, therefore, con-

clude the court did not abuse its discretion in overruling Hood's relevancy objections to such evidence.

After considering all of Hood's contentions and arguments, whether or not specifically addressed, we find no reversible error.

The judgment of conviction of the trial court is affirmed.

AFFIRMED.

All justices concur except HARRIS, McCORMICK and WOLLE, JJ., who dissent.

HARRIS, Justice (dissenting).

I dissent for the reasons stated in my dissent in *State v. Snodgrass*, 346 N.W.2d 472 (Iowa 1984). I would reverse defendant's conviction and remand the case for a new, separate trial.

McCORMICK and WOLLE, JJ., join this dissent.

---

1. This case was tried prior to the recently adopted Iowa Rules of Evidence, effective July 1, 1983.