STATE of Minnesota, Respondent,

v.

Craig Manuel ROBERTS, Appellant.

No. C6–85–1995.

Court of Appeals of Minnesota.

Sept. 23, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Ragnhild Anne Westby, St. Paul, for appellant.

Heard, considered, and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

WOZNIAK, Judge.

Craig Roberts appeals from convictions following a jury trial of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342(d) (1984) and kidnapping in violation of Minn.Stat. § 609.25(1) (2) (1984) for abducting and raping a 17–year-old

woman. Roberts contends the evidence is insufficient to sustain his conviction. He also claims the trial court erred by: (1) excluding evidence of complainant's juvenile record and of subsequent prostitution citations; and (2) prohibiting expert testimony that appellant's personality profile was inconsistent with that of a rapist. We affirm.

## FACTS

Shortly before midnight on November 13, 1984, D.T., then age 17, reported to police that she had been raped. St. Paul police picked her up at a restaurant on University Avenue where she went to place her call.

At about 11:00 p.m., D.T. was waiting for her boyfriend to come home outside his apartment on Dale and Sherburne. She testified that a man drove up wielding a small handgun and forced her into his car, drove to a nearby parking lot, forced her into the back seat, pulled down her pants, and had anal intercourse with her. She testified the man threatened her with the gun if she did not cooperate. She asked the man to quit because "it hurt," but he refused. D.T. and the man moved to the front seat of the car. She said she needed some fresh air, got out of the car, and tried to memorize the license number.

She testified the number was either FED 802 or 820, and as the assailant sped off, she went directly to a phone booth and called police. She noticed that her scratched blue comb was no longer in her back pocket.

D.T. related the details of the assault to police and described the man, his clothing, and his car. She said the man was 5'7", thin, about 120 pounds, with a short Afro hairstyle, and clean-shaven with a light mustache. She said he wore a maroon leather jacket over a blue shirt with gray pinstripes, blue jeans, and white tennis shoes. She described the car as a small brown or tan-colored one, with a fold-down back seat. Police took D.T. to St. Paul Ramsey Hospital where she was examined and tested.

On November 14, D.T. looked at 50 or 60 pictures of suspects, but was unable to identify anyone.

Appellant was arrested on November 15 for unrelated solicitation to prostitution allegedly committed on that date. Police searched his car, a brown Chevette, license FET 802, and found a small black B.B. handgun belonging to his wife's ten-year-old daughter.

On November 17, D.T. viewed a group of eleven photos, including one of appellant, and positively identified Craig Roberts as the man who raped her. He was arrested later that day. Police searched his car and found a large blue comb under the rear seat.

The doctor who performed the sexual assault exam testified that the findings of his examination were consistent with sexual assault. Although an initial screening test did not indicate that seminal fluid was present in the anal area, later lab tests verified the presence of sperm in D.T.'s rectum. An enzyme found in seminal fluid, acid phosphate, was also detected.

Samples of hair, blood, and saliva were taken from Roberts and D.T. and submitted to the Minnesota Bureau of Criminal Apprehension (BCA) for testing. A hair found in D.T.'s underpants was determined to be Negroid, but it did not come from appellant. However, D.T. testified at trial that she had sexual intercourse with her boyfriend, a black man, two and one-half days prior to the rape. BCA tests did not exclude Roberts as the source of the seminal fluid found in D.T.'s underpants.

The defense theory was that Craig Roberts did not rape D.T.; that he spent the evening at school and at home with his fiancee. D.T. described the assailant as 5'7" tall and about 120 pounds. Roberts is about 6' tall and weighs about 155 pounds. His hair is close-cropped, while D.T. described it as a short Afro. Appellant testified he did not own a maroon jacket, blue shirt with gray stripes or tennis shoes. However, he has a pair of white, high-top leather shoes he referred to as "hippopotamus."

Appellant was charged with first-, second-, and third-degree criminal sexual conduct and kidnapping on November 17, 1984. He pleaded not guilty. Roberts moved to suppress evidence of a B.B. gun found during a search of his car following the solicitation arrest. After a *Rasmussen* hearing, the trial court ruled the B.B. gun would not be admitted at trial.

The defense subpoenaed D.T.'s juvenile court file in order to introduce evidence of D.T.'s prostitution history. At trial, the court quashed defendant's subpoena for D.T.'s juvenile court file on grounds it was irrelevant, impeachment on a collateral issue, and the prejudice would vastly outweigh any probative value. The trial court also ruled that Robert's arrest for soliciting an undercover police officer was inadmissible. Throughout the trial, the defense attempted to introduce evidence suggesting D.T. worked as a prostitute. The trial court rejected the proffered evidence, stating it would only serve to collaterally impeach complainant's testimony. Finally, the trial court denied appellant's request to introduce expert opinion that Roberts was unlikely to be involved in "this form of criminal activity."

A jury found Roberts guilty of all four offenses. Convictions for second- and third-degree criminal sexual conduct were vacated pursuant to Minn.Stat. § 609.04 (1984). Roberts was sentenced to the guidelines' presumptive sentence of 43 months executed for criminal sexual conduct in the first degree, and a concurrent 21–month sentence for kidnapping. Roberts received credit for 85 days jail time served prior to sentencing.

## ISSUES

1. Is the evidence sufficient to sustain appellant's convictions?

2. Did the trial court abuse its discretion in excluding evidence of complainant's juvenile record and pending prostitution citations?

3. Did the trial court err by not permitting an expert to testify that appellant's personality profile was inconsistent with that of a rapist?

## ANALYSIS

1. Appellant claims there is insufficient evidence to support his convictions. In reviewing a claim of insufficient evidence, an appellate court is limited to determining whether a trier of fact could reasonably conclude the defendant was guilty of the crime charged. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

Minn.Stat. § 609.342, subd. 1(d) (1984), defines first-degree criminal sexual conduct as sexual penetration of another person and:

(d) the actor is armed with a dangerous weapon or any article used or fashioned in a manner to lead the complainant to reasonably believe it to be a dangerous weapon and uses or threatens to use the weapon or article to cause the complainant to submit.

D.T. testified that Roberts had a gun which he threatened to use on her if she did not cooperate. The record also shows that Roberts had access to a B.B. gun belonging to his 10–year-old stepdaughter. D.T. testified that Roberts forcibly had anal intercourse with her. She told the same story, in detail, to police, to doctors, and at trial. She described the assailant's car and gave police a license number.

A victim's testimony in a sexual assault prosecution need not be corroborated. Minn.Stat. § 609.347, subd. 1 (1984); *see State v. Myers*, 359 N.W.2d 604, 608 (Minn. 1984). Yet, in this case, there is corroborating evidence. Laboratory tests confirm the existence of semen in D.T.'s underpants and in her anus. Complainant's comb was found in Roberts' car. In addition, scientific tests do not rule out Roberts as the attacker.

Although contradictory evidence in the record casts doubt upon D.T.'s identification of Roberts, there are plausible explanations for all these contradictions, especially since it was dark when the rape occurred. D.T. saw the man standing for only about a minute when he got out of his

car to grab her. The hair in her underpants could be that of her boyfriend with whom she testified to having intercourse two days prior to the rape.

The jury could have reasonably concluded Roberts was the man who kidnapped and raped D.T. on November 13, 1984. It is for a jury to determine witnesses' credibility. *State v. Daniels,* 380 N.W.2d 777, 781 (Minn.1986). Sufficient evidence supports appellant's convictions of first-degree criminal sexual conduct and kidnapping.

2. Appellant claims he was denied his constitutional right of confrontation by exclusion of evidence relating to D.T.'s juvenile record and her subsequent pending prostitution citations.

The trial court excluded all evidence relating to D.T.'s juvenile record, finding it barred by Minn.Stat. § 609.347, subd. 3(d) (1984) and Minn.R.Evid. 404(c)(1)(A)(i). The court excluded evidence of D.T.'s police contact since age 18 as unfairly prejudicial.

The statute and rule make it clear that evidence concerning a complainant's previous sexual conduct may only be admitted in the following limited circumstances: (1) when consent is in issue; (2) when prosecution offered evidence of pregnancy, semen, or disease to show the offense occurred or that the accused committed it; or (3) when the victim testifies concerning lack of previous sexual conduct.

Consent was not an issue in this case. The prosecution did not present D.T. as sexually inexperienced. The only possible authorization for use of this evidence is Minn.R.Evid. 404(c)(1)(B), which allows evidence of specific instances of the victim's previous sexual conduct to show the source of semen, pregnancy, or disease. However, the trial court must still determine whether the probative value of the evidence is substantially outweighed by its inflammatory or prejudicial nature. The judge so ruled, stating:

> It's so obvious to the court that the use of that juvenile record would vastly outweigh any evidentiary value by its prejudice. * * *

In *State v. Caswell,* 320 N.W.2d 417 (Minn.1982), the supreme court held that evidence of a complainant's previous sexual conduct should be admitted when evidence shows a predisposition to fabricate a charge of rape. *Id.* at 419 (citing *United States v. Kasto,* 584 F.2d 268, 271 n. 2 (8th Cir.1978)). We have held such evidence should only be admitted when the probative value outweighs the potential for unfair prejudice. *State v. Powe,* 389 N.W.2d 215 (Minn.Ct.App.1986).

We hold the trial court did not abuse its discretion in denying the admission of D.T.'s juvenile record and her subsequent prostitution citations. If appellant had raised the issue of consent as a defense, the evidence may have been properly admitted under the rules. In this case, we uphold the trial court's broad discretion.

Further, the trial court's refusal to admit evidence of a rape victim's prior sexual conduct does not violate an individual's constitutional right of confrontation under U.S. Const. amend. VI and Minn. Const. art. 1, § 6. *State v. Hamilton,* 289 N.W.2d 470, 475–6 (Minn.1979); *see also State v. Dornack,* 329 N.W.2d 839 (Minn.1983).

3. The defense offered testimony of and a written report by psychiatrist Dr. Steven Greenwald, who would testify that Roberts' personality profile was not similar to that of a rapist. The trial court refused to permit Greenwald to testify as a character witness because he would not offer any evidence of Roberts' truth and veracity within the community. Minn.R.Evid. 608.

The admission of expert testimony is discretionary with the trial court, and this determination will not be reversed on appeal absent apparent error. *State v. Myers,* 359 N.W.2d at 609. To be admissible under Minn.R.Evid. 702, expert testimony must assist the jury in solving the factual issue presented. *State v. Saldana,* 324 N.W.2d 227, 229 (Minn.1982).

Greenwald's testimony would not assist the jury in reaching a decision and would unfairly prejudice the prosecution. The trial court did not abuse its discretion.

## DECISION

There is sufficient evidence to support appellant's convictions of first-degree criminal sexual conduct and kidnapping. Where appellant's defense to a rape charge was not the issue of consent, the trial court did not abuse its discretion in excluding evidence of complainant's juvenile record or subsequent prostitution citations. The trial court did not err in prohibiting expert psychological testimony.

Affirmed.