STATE of Iowa, Appellee,

v.

Bart HULBERT, Sr., Appellant.

No. 90–452.

Supreme Court of Iowa.

Feb. 19, 1992.

Linda Del Gallo, State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie Ann Halligan, Asst. Atty. Gen., and Lawrence A. Stumme, County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This case is before us on further review from a court of appeals decision that reversed defendant Bart Hulbert's criminal convictions for sexually assaulting his ten-

year-old daughter. The court of appeals' reversal rested on its view that Hulbert was unfairly prohibited from tendering expert testimony that would show he did not fit the psychological "profile" of known child molesters. Because we believe the district court's evidentiary ruling fell within its sound discretion, we vacate the court of appeals opinion, reinstate the convictions, and remand to correct a sentencing error conceded by the State.

The charges against Hulbert stem from a conversation between his daughter, N.H., and her school guidance counselor following a fourth-grade program about "good, bad, and confusing touches." N.H. revealed to the counselor, and later to child abuse investigators, several incidents of sexual contact with her father. At the time, Hulbert and N.H.'s mother were separated; Hulbert had custody of N.H. and her younger brother.

After further investigation, including interviews with Hulbert himself, the State charged him with violating Iowa Code sections 709.1 and 709.3 (1989) (second-degree sexual abuse), 709.8 (lascivious acts with a child), and 709.12(1) (indecent contact with a child). Prior to trial, Hulbert successfully moved in limine to exclude from evidence a videotaped interview between N.H. and child protective worker Kathryn Lee. The case proceeded to trial. The State rested its case on the testimony of N.H., the guidance counselor, investigator Elizabeth Branstad, the Bremer County Sheriff who interviewed both Hulbert and his wife, N.H.'s mother (Pamela Hulbert), and Dr. Kathleen Opdebeeck (pediatrician and director of the Child Protection Center in Cedar Rapids). The defense responded with testimony from Hulbert's mother and stepfather concerning defendant's close relationship with N.H. and their view that she could be a temperamental child who was, on occasion, untruthful. Also called were the school principal and a cousin who testified regarding Hulbert's history as an interested parent concerned for his daughter's welfare.

Defendant also offered the expert opinions of Dr. Ralph Underwager, a psychologist with extensive background in the evaluation and treatment of sex abuse victims and perpetrators. Based on his research and professional experience, the psychologist offered his opinion about the "good touch, bad touch" curriculum and the interview techniques generally employed by child abuse investigators. He was not allowed, however, to critique the videotaped interview between N.H. and Kathryn Lee because it was not in evidence. Nor was he permitted to express his view that the results of Hulbert's psychological tests did not match those of the typical abuser.

The jury convicted Hulbert of second-degree sexual abuse, lascivious acts, and indecent contact. The court sentenced Hulbert to concurrent indeterminate terms of twenty-five years on the sex abuse conviction and five years on the lascivious acts conviction. Expressing concern about the "present status of parole" and "the time necessary for [Hulbert] to complete the sexual offenders' program," the court ordered the two-year sentence on the indecent contact conviction to run consecutively to the other sentences. Further facts will be detailed as they pertain to the issues raised on appeal.

I. *Psychologist's testimony.* Hulbert's appeal raises two issues concerning the limits placed on Dr. Underwager's testimony: (1) the court's refusal to allow his critique of the Kathryn Lee interview of N.H., and (2) its refusal to permit opinion testimony about whether Hulbert fit the profile of a child molester. Because the court of appeals' reversal rested on the second issue, we shall address it first.

A. *Profile.* Through the testimony of Dr. Underwager, Hulbert sought to introduce results of psychological tests showing that he was a normally functioning individual whose test results did not match the psychological pattern or profile of known sex abusers. In an offer of proof, Underwager testified that child molesters are: (1) almost exclusively male; (2) immature and incapable of maintaining adult heterosexual relationships, socially inept, and withdrawn; (3) unable to control their impulses; and (4) often demonstrate a high level of

anger. Hulbert, on the other hand, tested within normal limits on a battery of tests for traits of coping ability, social skill, self-concept, honesty, openness, loyalty, conflict avoidance, idealism, sensitivity to others, and love for his children. When asked to compare Hulbert's test results with those of known sex offenders, Dr. Underwager testified in the offer of proof that he could find no similarity between the two profiles.

The court sustained the State's motion to exclude this evidence on the ground it was not a proper subject of expert testimony and would invade the jury's exclusive domain regarding issues of credibility. On appeal, Hulbert claims the evidence would have aided the jury's understanding of the behavioral and psychological traits of known molesters, thereby raising a reasonable doubt regarding his guilt. He also contends the testimony should have been admitted as relevant evidence of good character and his nondisposition to commit the charged offenses.

■ We begin our analysis by noting that the admissibility of opinion evidence falls squarely within the trial court's sound discretion. *State v. Myers*, 382 N.W.2d 91, 93 (Iowa 1986). Reversal is justified only when that discretion is abused; that is, when the court's decision rests on clearly untenable grounds. *Id.* Our jurisprudence has generally reflected a liberal view about psychological evidence, vesting the trial courts with broad discretion in its admission "guided by the question of whether the expert's opinion will be helpful to the jury in performing its function." *State v. Halstead*, 362 N.W.2d 504, 506 (Iowa 1985); *see State v. Gettier*, 438 N.W.2d 1, 4, 6 (Iowa 1989) (within court's discretion to admit expert testimony regarding classic psychological symptoms of traumatic stress syndrome); *State v. Hood*, 346 N.W.2d 481, 485 (Iowa 1984) (no abuse of discretion where court admitted psychological evidence of "passive-dependent" personality relevant to codefendant's inability to form requisite criminal intent); *State v. Tonn*, 441 N.W.2d 403, 405 (Iowa App. 1989) (citing *Myers* for proposition that experts are generally allowed to express opinion on matters relevant to mental symptoms present in sexually abused children).

■ Our cases also hold, however, that expert psychological evidence may not be used to merely bolster a witness's credibility. This is because veracity is not a "fact in issue" subject to expert opinion. *Myers*, 382 N.W.2d at 97. Assessment of a witness's credibility is uniquely within a lay jury's common understanding. *Halstead*, 362 N.W.2d at 507. Thus neither prong of the rule permitting expert testimony could be met by the offer of such evidence; the specialized proof would neither "assist the trier of fact to understand the evidence [nor] determine a fact in issue." Iowa R.Evid. 702.

■ Nor may such opinion evidence be employed as a direct comment on the guilt or innocence of the defendant. *Myers*, 382 N.W.2d at 95. Such opinions would replace, not aid, the jury's function. *Id.* Our court of appeals recently noted this distinction in *State v. Dodson*, 452 N.W.2d 610 (Iowa App.1989), in which the defendant challenged the admissibility of psychological testimony offered to explain the behavior of child witnesses who are the alleged victims of abuse. Noting that the probative value of "accommodation syndrome" evidence is limited because, according to this psychological theory, abused and nonabused children often behave similarly, the court wisely observed that "[t]here is a very fine line between an opinion that is helpful to a jury and an opinion that merely conveys a conclusion concerning defendant's guilt." *Id.* at 612.

■ Our concern is whether Dr. Underwager's proposed testimony crosses this fine but essential line. It is clear that Hulbert had the right, as a criminal defendant, to offer evidence of his own good character for the purpose of proving it unlikely that he committed the crimes charged. *State v. Hobbs*, 172 N.W.2d 268, 271 (Iowa 1969); *Hood*, 346 N.W.2d at 485; Iowa R.Evid. 404(a)(1). Ordinarily this proof would be offered through the testimony of laypersons in the community who are aware of the defendant's "real" character either by direct knowledge or reputa-

tion. *Hobbs,* 172 N.W.2d at 271. This is the kind of character evidence Hulbert produced through the testimony of N.H.'s school principal and his cousin—that he is a caring and devoted parent, concerned only with the welfare of his child and thus unlikely to commit the unspeakable acts alleged here. Consistent with the general rule, this evidence related to opinions formed *prior* to commission of the offenses. *Id.* at 274.

By contrast, Dr. Underwager's proposed "professional" character evidence was based on Hulbert's performance on after-the-fact interviews and standardized test scores. We have upheld the admission of similar evidence where it related to a personality disorder suffered by a criminal codefendant that would potentially negate the intent element in a prosecution for first-degree murder. *See Hood,* 346 N.W.2d at 485. But here the proffered testimony bears on Hulbert's *freedom* from mental disorder. To highlight his normalcy, Hulbert seeks a generalized comparison with sociopathic personalities.

A number of jurisdictions have rejected opinion evidence of the type tendered by Hulbert on the ground that it invades the province of the jury and unfairly prejudices the prosecution, or violates rules prohibiting "expert" character evidence. *See, e.g., Pendleton v. Commonwealth,* 685 S.W.2d 549, 553 (Ky.1985); *People v. Watkins,* 176 Mich.App. 428, 430, 440 N.W.2d 36, 37–38 (1989); *State v. Roberts,* 393 N.W.2d 385, 388 (Minn.App.1986); *State v. Hansen,* 304 Or. 169, 176, 743 P.2d 157, 161 (1987); *Williams v. State,* 649 S.W.2d 693, 695–96 (Tex.App.1983); *State v. Friedrich,* 135 Wis.2d 1, 16–17, 398 N.W.2d 763, 770 (1987).

Taking a contrary view, the California Supreme Court has permitted such evidence. *People v. Stoll,* 49 Cal.3d 1136, 1161, 265 Cal.Rptr. 111, 127, 783 P.2d 698, 714 (1989). This is the opinion our court of appeals relied upon for reversal. We note, however, that *Stoll* involved psychological evidence which did not include a profile, and the court's decision rested in large part on state common law and statutory law which specifically permits persons accused of lascivious acts to tender proof of sexual nondeviance. *Id.* at 1152–53, 265 Cal.Rptr. at 121, 783 P.2d at 707–08. *See also People v. Ruiz,* 222 Cal.App.3d 1241, 1245–46, 272 Cal.Rptr. 368, 371–72 (1990) (construing *Stoll* narrowly, profile evidence held not admissible without showing of reliability on remand).

Faced with uncertainty regarding the true nature of the evidence being proffered, and the disparate views in this jurisdiction and others concerning its admissibility, we are convinced the district court's decision to limit Underwager's testimony was neither untenable nor an abuse of discretion. The proposed testimony is not so clearly an opinion on credibility as that involved in *Myers,* where an expert testified that children almost never lie about sexual abuse. *Myers,* 382 N.W.2d at 92. But it clearly goes beyond ordinary character evidence. It comes cloaked with an aura of scientific reliability about the predisposition of certain individuals to commit the type of crime at issue. To that extent the proposed testimony more closely resembles the other evidence condemned in *Myers:* expert opinion on the ultimate question of guilt or innocence. *See id.* at 94.

The question boils down to whether the evidence would aid the jury in its decision-making role. We are confident in the court's judgment that it would not. Evidence of Hulbert's positive character traits was already in the record. We think the trial court could reasonably find the jury capable of assessing evidence of "normalcy" in this realm of human behavior without resort to expert opinion regarding deviancy. Finding no abuse in the trial court's discretion, we vacate the decision of the court of appeals and consider briefly the other arguments advanced by Hulbert.

B. *Interview critique.* Hulbert contends the district court also abused its discretion by limiting Dr. Underwager's testimony concerning Kathryn Lee's interviewing techniques. Lee is a social worker who interviewed N.H. shortly after the reported abuse. The interview was videotaped.

The court limited Dr. Underwager's critique of Lee's methodology because it had earlier sustained Hulbert's limine motion to prevent the tape from being admitted in evidence. The court refused to allow Hulbert to use the tape "as both a sword and a shield."

■ Like the court of appeals, we find the court's evidentiary ruling well within its discretion. The court could reasonably conclude that without the interview in evidence, there was no fact in issue that Dr. Underwager's testimony would aid the jury in better understanding. *See* Iowa R.Evid. 702. Moreover, the record reveals that the court permitted Dr. Underwager to testify at length concerning his opinion about the confusing aspects of the "good touch, bad touch" curriculum, the tendency of investigators to interview children in a way that confirms the investigator's own hypothesis as to what occurred, and the suggestive and coercive effect of successive interviews. While this opinion evidence may well have been strengthened by a demonstration of Lee's performance, Hulbert himself moved to exclude the demonstration tool. Under the circumstances, we cannot say the court abused its discretion by restricting its use. No ground for reversal appears.

II. *Spoliation instruction.* Hulbert also cites error in the court's refusal to give a spoliation instruction. The request stemmed from proof that another taped interview between N.H. and an investigator was erased by a sheriff's deputy while duplicating it for the defendant. Hulbert sought an instruction which would permit the jury to draw an inference favorable to the defendant based on the tape's destruction. The district court rejected the request, and rightly so.

■ To prove a due process violation based on destruction of evidence, the defendant must show (1) a proper defense request for the evidence; (2) that the evidence was material; and (3) that the evidence would have been significantly favorable to the defendant. *State v. Brown*, 337 N.W.2d 507, 511 (Iowa 1983). Crucial to this case is the further rule that the spolia-

tion inference is inappropriate unless the destruction is intentional. *State v. Langlet*, 283 N.W.2d 330, 333 (Iowa 1979). Only a deliberate act supports the rationale underlying the rule: that destruction serves as an "admission by conduct of the weakness of one's case." *Id. See also Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988) (distinguishing state's failure to disclose material exculpatory evidence from failure to preserve potentially useful evidence, Court held "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").

■ Our review of the record on this point is de novo. *State v. Maniccia*, 355 N.W.2d 256, 258 (Iowa App.1984). Although the defendant attempts to persuade us otherwise, we are convinced that the tape erasure was negligent, not intentional. The tape, though barely audible, had been played at least twice for defense counsel who took notes concerning its contents. The erasure occurred when a deputy offered to duplicate the tape so a copy could be made available to Dr. Underwager. Apparently two recorders were used for this procedure. The deputy, thinking he was following professional instructions, literally "got his wires crossed" between machines and erased rather than copied the tape. Three to four minutes of the tape were spared erasure. But when the deputy tried to duplicate what remained he corrected the wiring error but made the new mistake of pushing the "record" button on both machines instead of "play" on one and "record" on the other.

The defendant contends these dual errors point to bad faith on the State's part. We cannot agree. The record reveals an attempt by the deputy to help, not hinder, the defense. More importantly, the evidence demonstrates that the officer was unfamiliar with the contents of the tape, thereby dispelling the inference that the destruction was intended to eliminate a weakness in the State's case. Failure to give a spoli-

ation instruction under these circumstances was not reversible error.

 III. *Sentencing.* The State concedes that the court's use of consecutive sentences to thwart a perceived risk of early parole warrants a remand for resentencing. *See State v. Remmers,* 259 N.W.2d 779, 785 (Iowa 1977) (trial court's expression of dissatisfaction with parole practices and resultant attempt to lengthen sentence demonstrates reliance on impermissible sentencing factors). We do not suggest by this opinion that other permissible reasons for consecutive sentencing do not exist. We thus affirm the district court's judgment in all respects but for the sentence which is hereby vacated and the case remanded for resentencing.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.