# IN THE COURT OF APPEALS OF IOWA

No. 15-2045
Filed May 17, 2017

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**CHAD MICHAEL GILLSON,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Lucas County, Gary G. Kimes, Judge.


　　　　The defendant appeals from his convictions for sexual abuse in the third degree and incest.  **REVERSED AND REMANDED.**


　　　　Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


　　　　Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Chad Gillson appeals from his convictions, following a bench trial, for sexual abuse in the third degree and incest. Gillson maintains he received ineffective assistance from trial counsel. Specifically, he claims counsel was ineffective for failing to object to the vouching testimony of three separate witnesses—the investigating officer, the forensic interviewer, and the complaining child's psychologist.[1]

We review claims of ineffective assistance de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). "To establish his claim of ineffective assistance of counsel, [Gillson] must demonstrate (1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). To prove counsel failed to perform an essential duty, he must show "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. To establish prejudice, Gillson must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The probability of a different result must be 'sufficient to undermine confidence in the outcome.'" *Afinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008) (citation omitted). Where, as here, the defendant makes multiple claims, we "look to the cumulative effect of

---

[1] Because we find Gillson did not properly object to the testimony he now complains of, we consider his claims under his alternate theory of ineffective assistance. Additionally, Gillson raises a number of other claims that we do not consider because we find his first issue is dispositive.

counsel's errors to determine whether the defendant satisfied the prejudice prong of the *Strickland* test."[2]  *Clay*, 824 N.W.2d at 500.

Iowa courts "are generally committed to a liberal rule which allows opinion testimony if it will aid the jury in screening the properly admitted evidence to ascertain the truth."  *State v. Myers*, 382 N.W.2d 91, 93 (Iowa 1986).  However, this liberal rule does not extend to opinion testimony that vouches for or bolsters the credibility of another witness.  *See, e.g.*, *State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014) ("We see no reason to overturn this well-settled Iowa law prohibiting an expert witness from commenting on the credibility of a victim in a criminal sex abuse proceeding."); *see also* Iowa R. Evid. 5.701 (limiting the opinion testimony of a lay witness).  "Our system of justice vests the [factfinder] with the function of evaluating a witness's credibility."  *Dudley*, 856 N.W.2d at 677 (citing *State v. Hulbert*, 481 N.W.2d 329, 332 (Iowa 1992)).  "[V]eracity is not a 'fact in issue' subject to expert opinion."  *Hulbert*, 481 N.W.2d at 332.

Here, Gillson focuses on the testimony of three witnesses[3] whom he claims were allowed to vouch for the credibility of the complaining witness:

Deputy Sheriff Brian Kennedy testified about his investigation of the charges.  He stated that he watched a video of the complaining witness being interviewed by forensic interviewer, Tammera Bibbins.  At trial, the following exchange occurred between the prosecutor and Deputy Kennedy:

---

[2] We resolve claims of ineffective assistance on direct appeal only when the record is adequate to do so.  *See State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012).  Here, the record is adequate for our review, so we proceed to the merits.

[3] Gillson characterizes each of the three witnesses—the officer, forensic interviewer, and the complaining witness's psychologist—as experts.  The State does not dispute the characterization, and both have relied on Iowa Supreme Court cases involving the vouching testimony of experts in sexual abuse cases.

> Q. In reviewing the tape as a whole and the statements of [Z.G.] in response to questions by Tammera Bibbins did you form an opinion with respect to whether or not [Z.G.] was the victim of criminal acts?  A. Yes, I did.
>
> Q. Pardon me?  A. I said yes, I did, and I believe she was the victim of a sexual assault involving [Gillson] as the perpetrator.
>
> Q: And the crime of incest as well?  A. Yes.
>
> Q. And did you continue then to investigate that?  A. Yes.
>
> Q. And in your investigation did you make the determination that Chad Michael Gillson committed a sex act upon [Z.G.]?  A. Yes.
>
> Q. And what was that sex act?  A. Vaginal intercourse.
>
> Q. And that would have occurred where?  A. At his residence in his bedroom in his bed.
>
> Q. And that would have occurred when?  A. I believe the weekend of April 5th of 2014.
>
> Q. So it would be April 5th and April 6th of 2014?  A. Yes.

The officer did not offer any support for his conclusions other than watching the video of the witness's statements to the forensic interviewer.  He did not obtain any physical evidence and a medical exam was never completed.  Moreover, when the officer had Gillson to come to the station for an interview, Gillson denied having "indecent contact" with Z.G.; the officer arrested him for the acts during the same discussion.  Thus, the officer's testimony amounted to nothing more than a statement of his own belief that the complaining witness was credible.

Similarly, the prosecutor also asked the forensic interviewer to comment on whether she believed the allegations made by the complaining witness; the following exchange took place between Bibbins and the prosecutor during direct examination of Bibbins:

> Q. In listening to [Z.G.'s] explanation or details of what happened concerning [Gillson] and herself, if you would, please describe what you believe to be the sex act that you heard her describe to you?  A. She said that [his] penis touched her vagina.
> . . . .

Q. As you listened to [Z.G.] describe the sex act, did you form an opinion with respect to what she was speaking of or how she was speaking of it in her descriptions to you? A. Can you be more specific about opinions?

Q. Did you believe that she was speaking—when she was describing the sex act with Chad Gillson that you have described— that she was describing it from her own experience? A. The details that she provided seemed as if she were speaking from her own experience.

Finally, the complaining witness's psychologist expressed her belief the witness was suffering from post-traumatic stress disorder because she was sexually abused. During her testimony, the prosecutor asked if the psychologist found "a traumatic sex act or other act that was causing the post-traumatic stress disorder." The psychologist responded, "Yeah," before defense counsel interjected with an objection as to hearsay.[4] The court overruled the objection, and the psychologist continued, stating Z.G.'s mother shared "some of the details of what happened to" Z.G. with the psychologist, "and later on in my treatment [I] did affirm that [Z.G.] was sexually assaulted by" Gillson.

Furthermore, the prosecutor referenced both the credibility of the complaining witness and the vouching statements in his closing, stating, "The testimony of [Z.G.] was very credible. She presented herself as a witness very well. Her descriptions of what happened have been supported by the other witnesses."

Much of our case law has dealt with indirect vouching or bolstering, with experts being asked to provide statistics on how rarely children misreport sexual abuse, *see Myers*, 382 N.W.2d at 97, or by explaining if a complaining child's

---

[4] Although defense counsel interposed an objection before this response, it was not an objection as to vouching (or impermissible expert testimony). *See* Iowa R. Evid. 5.702. Thus, this testimony is also considered in the ineffective-assistance framework.

behavior is consistent with that of a victim's behavior, *see Dudley*, 856 N.W.2d at 677. But here, three witnesses were asked to—and did—offer direct testimony about their belief in the credibility of the witness's allegations. "[T]here is a very thin line between testimony that assists the [factfinder] in reaching its verdict and testimony that conveys . . . that the child's out-of-court statements and testimony are credible." *Dudley*, 856 N.W.2d at 677. Here, the testimony crossed the line, and Gillson's trial counsel breached a duty in failing to object. *See State v. Pitsenbarger*, No. 14-0060, 2015 WL 1815989, at *9 (Iowa Ct. App. Apr. 22, 2015) (finding that even if it was a strategic decision not to object to vouching testimony by an expert, "it was a strategy that had no reasonable chance of success, particularly in light of how pervasive the expert's vouching testimony was in this trial").

Next, we must determine whether Gillson was prejudiced by the admission of the vouching testimony. As we said above, we consider the cumulative effect of the improper evidence. *See Clay*, 824 N.W.2d at 500. The State maintains Gillson's claims should fail, arguing Gillson cannot establish he was prejudiced by the improper testimony because the case was tried to the bench.

We are less likely to reverse when inadmissible evidence is introduced in a bench trial than in a jury trial. *See State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004). "This is because legal training helps equip those in the profession to remain unaffected by matters that should not influence the determination." *Id.* And as the State points out, "Judges routinely are called upon to consider the admissibility of evidence that may be later excluded at trial. Judicial knowledge of evidence which is subsequently not admissible does not ordinarily undermine

later judicial determinations in the case." *State v. Decker*, 744 N.W.2d 346, 356 (Iowa 2008).

But here, we have no reason to believe the court rejected or set aside the improper evidence. *Cf. Jasper v. State*, 477 N.W.2d 852, 857 (Iowa 1991) (noting the trial court specifically stated it would not consider the inadmissible evidence and affirming denial of postconviction relief). In *Matheson*, the State maintained the admission of improper evidence was harmless for all of the reasons the State claims it is not prejudicial here. 684 N.W.2d at 244. Our supreme court responded, "But we cannot ignore the error here by assuming the . . . court did not consider it. In the first place, the court did not state the inadmissible evidence would not be a factor in determination. The evidence challenged here was offered specifically to influence the [court's decision]." *Id.* Because the trial court did not disclaim the improper evidence, we must assume the court considered the improper testimony in making its determination of guilt. *See id.* at 245 ("It might not always be fatal when evidence of this kind invades the record. But error is not cured when the . . . court merely omits that tainted evidence in its list of . . . considerations. As a minimum the court should make clear the offending evidence was not a consideration. Such a disclaimer is lacking here.").

The State claims this case is similar to *State v. Aguilar*, No. 14-1225, 2015 WL 5965076, at *6 (Iowa Ct. App. Oct. 14, 2015), because both are vouching cases that were tried to the bench rather than a jury. In *Aguilar*, a panel of our court considered whether the impermissible vouching testimony had prejudiced the defendant and concluded it did not. 2015 WL 5965076, at *6. However, we

believe the present case is easily distinguished. In *Aguilar*, the defendant "challenge[d] only a single sentence made during the course of a two-day bench trial" and "the evidence of the guilt was overwhelming" because the witness's testimony was "corroborated by medical history otherwise inexplicable in a six-year-old child, including trauma to her anus and vagina and testing positive for HSV2." *Id.*

Here, the State's case rested entirely on the credibility of the witnesses. In fact, the only finding made by the district court was, "The court finds the State's witnesses more credible than the Defendant." There was no physical evidence to corroborate the testimony of the complaining witness. *See State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014) (finding one line of vouching testimony prejudiced the defendant when there was "no physical evidence supporting the State's case"). Additionally, the vouching testimony was pervasive. *See Pitsenbarger*, 2015 WL 1815989, at *10 (finding prejudice, in part, because of the pervasiveness of the expert's vouching testimony). The State called only five witnesses: the complaining witness; the mother of the complaining witness[5]; and the deputy, forensic interviewer, and psychologist, each of whom vouched for the credibility of the complaining witness.

---

[5] We note that the following exchange occurred between the mother of the child and the prosecutor at trial:

> Q: At any time initially did you have any reason that you might disbelieve what [Z.G.] was saying? A. No.
> Q: Have you ever thought anything other than what she said was true? A. No.

Gillson has not challenged those statements or claimed his trial attorney should have objected. As instructed by our supreme court in *Dudley*, "we . . . break down each statement [the defendant] claims as objectionable to determine whether the State crossed the line."

Because there was not corroborating evidence and the improper vouching testimony was pervasive, the probability of a different result if counsel had objected is sufficient to undermine our confidence in the outcome of the proceedings. We reverse Gillson's conviction and remand for a new trial.

**REVERSED AND REMANDED.**