# IN THE COURT OF APPEALS OF IOWA

No. 16-1677
Filed November 8, 2017

**IN THE INTEREST OF C.W.,**
**Minor Child,**

**C.W.,**
        Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

The child appeals the juvenile court's order adjudicating him delinquent for sexual abuse in the second degree. **REVERSED AND REMANDED.**

Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, L.L.P., Charles City, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

The child appeals the juvenile court's order adjudicating him delinquent for sexual abuse in the second degree. The child claims: (1) the State failed to prove a sexual act occurred, (2) counsel was ineffective for failing to object to leading questions, (3) counsel was ineffective for failing to object to hearsay testimony, (4) counsel was ineffective for failing to object to prior-acts evidence, (5) counsel was ineffective for failing to object to impermissible vouching testimony, (6) counsel was ineffective for failing to object to lack of foundation, (7) counsel was ineffective for failing to argue the statute was unconstitutionally vague, and (8) counsel was ineffective for failing to argue the statute violated C.W.'s equal protection and due process rights. Because counsel elicited vouching testimony from State's witnesses, which prejudiced the juvenile, we reverse and remand for a new trial.

**I. Background Facts and Proceedings.**

On February 18, 2016, the State filed a petition for delinquency against C.W., claiming he sexually abused E.W., in violation of Iowa Code sections 709.1 and 709.3 (2016). C.W. denied the allegations in the State's petition.

On May 9, an adjudicatory hearing took place. Testimony revealed the following facts related to the State's petition alleging delinquent acts. E.W. and her siblings attended daycare at C.W.'s parents' home in 2014. At the time, E.W. was nine years old. On one occasion, C.W. and E.W. were sitting on the couch watching television. E.W.'s siblings were sitting in between them but eventually moved to the floor. C.W. moved to E.W.'s side of the couch and touched her buttocks with his hand.

On a separate occasion, E.W., E.W.'s sibling, and C.W. were sitting on a bed in C.W.'s room playing a game. C.W. was at the head of the bed, and E.W. was sitting near the foot of the bed. C.W. moved to E.W.'s location and touched E.W.'s buttocks and vagina with his hand.

Approximately one year later, following a Take Charge of Your Body presentation, E.W. reported to a teacher that C.W. touched her and her siblings on the vagina—although E.W. later testified that she was the only one touched by C.W. The teacher testified about E.W.'s demeanor during her reporting of the events, stating "[E.W.] was calm but she was also pretty quiet, I guess, she just seemed . . . down a little bit, not her perky self." The teacher reported the event to the school counselor per school procedures.

The school counselor testified E.W. told the counselor that C.W. had touched E.W.'s vagina. She initially reported to the counselor that the touching was underneath her clothes—although E.W. later testified the touching was over the clothes. The counselor stated E.W. was "nervous, uneasy . . . and not sure of what was going to happen." The counselor reported the events to the Iowa Department of Human Services (DHS) and E.W.'s parents.

The school counselor also testified about her experience with children reporting sexual abuse. She stated that children do not always understand certain types of touching are inappropriate. It is common for children to report an event after they see the Take Charge of Your Body presentation, and "several different students," including E.W., made a disclosure after the March presentation. In response to cross-examination by C.W.s counsel, the counselor stated she is not aware that any children with whom she has worked in her

twenty-seven years of experience have made false allegations about sexual abuse. The counselor testified regarding her experience and knowledge about circumstances underlying false reports of sexual abuse among children in general, explaining those circumstances did not apply to E.W. She stated:

> I suppose there would be getting attention. In this kind of an instance, if I had had several kids come talk to me so they would see that it was a time to get attention, but that wasn't what happened. This was like the first child out of the classroom that had come and talked to me so it wasn't—I mean, she sees me for small groups, it wasn't like she was searching for my attention so.

The forensic interviewer testified about her interview of E.W., which the law enforcement officer involved in the investigation observed. She stated E.W. was "matter-of-fact" during the interview. She testified about reasons a child might delay a truthful report and her experience with children minimizing the events based on their relationship with the person asking about the event.

E.W. testified at the adjudicatory hearing about two incidents with C.W. She was first asked about an uncharged encounter, not specified as to date. The following testimony occurred during direct examination:

> Q. And what do you remember happening when you were in the room? A. We were just sitting down watching TV.
> Q. And who was in the room with you besides your sisters? A. [C.W.].
> Q. Where were you sitting in the room? A. On the couch.
> Q. And where was [C.W.] at? A. On the couch.
> . . .
> Q. So your sisters moved away from sitting by you? A. Yeah.
> Q. Then what happened? A. He touched me, like, he scooted over and he touched me.
> Q. And did he say anything to you? A. No.
> Q. Where is it that he touched you? A. My butt.

Then, E.W. testified about the charged incident during direct examination:

Q. What happened while you were in his bedroom? A. We were just playing a game.

Q. Do you remember what game you were playing? A. No.

Q. And what happened that made you uncomfortable? A. He touched me again.

Q. And where were you at or sitting when that happened? A. At the end of the bed.

Q. And so did he move closer to you? A. Uh-huh.

Q. And where did he touch you? A. My butt and my vagina.

A DHS social worker was called by C.W. to testify about her report of child-abuse allegations based on E.W.'s report to DHS. The social worker was specifically asked about E.W.'s report that C.W. also touched E.W.'s sibling and C.W.'s sibling. Defense counsel also questioned the social worker about false reports. C.W. was interviewed by the social worker and the law enforcement officer and consistently denied touching E.W.

In its order finding C.W. committed the delinquent act, the juvenile court noted it considered the separate incident where C.W. touched E.W.'s buttocks while watching television "only for purposes of intent, motive, plan, and lack of accident." The juvenile court explained it was not considering the testimony as impermissible prior-acts evidence under Iowa Rule of Evidence 5.404(b). The juvenile court also addressed E.W.'s credibility:

In assessing credibility, the finder of fact must consider if the witness's testimony is reasonable and consistent with other evidence believed by the factfinder, whether a witness has made inconsistent statements, the witness's appearance, conduct, age, intelligence, memory and knowledge of the facts, and the witness's interest in the trial, their motive, candor, bias and prejudice.

E.W. is now 11 years old. At the time of the incident, she was 9, and routinely in the care of [C.W.]'s mother five days a week. There was an approximate one-year delay in E.W. making her disclosure. As [the social worker] and [the counselor]

testified,[1] delay in reporting of sexual abuse may occur because a child is told not to tell, the child may not be ready to talk about what happened right after the event, the child is worried they won't be believed or be supported, the child may think it is their fault, the child may fear they will be in trouble, or the child simply didn't know that what happened was wrong. The Court finds that the delay in disclosure does not weigh against E.W.'s credibility, and in many ways supports it.

The court wrote the varied details about whether E.W.'s siblings were involved and whether the touching was over or under the clothes did not weigh against E.W.'s credibility. The court also found the counselor "has not had a child make false allegations of sexual touching" in the counselor's twenty-seven years of experience working with children and sexual abuse.

At disposition, the court ordered C.W. to be placed in the custody of his parents for placement in their home and placed him on probation. C.W. appeals.

**II. Standard of Review.**

"Delinquency proceedings are special proceedings that serve as an alternative to the criminal prosecution of a child." *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). We review delinquency proceedings de novo. *Id.* at 49–52. We review issues both legal and factual questions under this standard. *In re D.L.C.*, 464 N.W.2d 881, 882 (Iowa 1991). Though we are not bound by them, we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses. *A.K.*, 825 N.W.2d at 49. Affirming the standard of de novo review, our supreme court stated: "We note that de novo review of the evidence may promote efficiency when there is an evidentiary error below

---

[1] This social worker did not testify about delay in reporting, but the forensic interviewer did testify to the list of possible reasons for delayed reporting adopted by the district court in its adjudicatory ruling.

because we can review the evidence anew, without consider the inadmissible evidence, to determine whether the State has proven the child committed the acts beyond a reasonable doubt." *Id.* at 51. We presume C.W. to be innocent, and the State has the burden of proving beyond a reasonable doubt that he committed the delinquent acts. *Id.* We review ineffective-assistance-of-counsel claims de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

**III. Discussion.**

**A. Ineffective Assistance of Counsel.**

C.W. claims counsel was ineffective for failing to object during E.W.'s testimony to leading questions, testimony about another incident between C.W. and E.W., and hearsay testimony. C.W. also claims counsel was ineffective for allowing an expert witness to vouch for E.W. Finally, C.W. claims counsel was ineffective for failing to challenge the criminal statute as unconstitutionally broad and violating C.W.'s due process and equal protection rights. Because we find counsel was ineffective for eliciting prejudicial testimony about the likelihood E.W. made a false report, we do not reach the other claims of ineffective assistance of counsel.

Children are entitled to effective assistance of counsel during juvenile court proceedings. *See* Iowa Code § 232.11(1)(d), (f); *In re M.L.*, 868 N.W.2d 456, 460 (Iowa Ct. App. 2015). Although juvenile proceedings are civil not criminal, the *Strickland* test for ineffective assistance of counsel applies. *See* *M.L.*, 868 N.W.2d at 460; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To prove a claim of ineffective assistance of counsel, C.W. must demonstrate by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) C.W. suffered prejudice as a result. *See State v. Morgan*, 877 N.W.2d 133, 136 (Iowa Ct. App. 2016). The claim fails if either prong is not proved. *Id.* When a juvenile chooses to raise an ineffective-assistance-of-counsel claim on direct appeal, we may either determine the record is adequate and decide the claim or find the record is inadequate and remand the proceedings for further development of the record. *See* Iowa R. App. P. 6.1004; *see also In re T.R.*, No. 07–1777, 2008 WL 4569896, at *1 (Iowa Ct. App. Oct. 15, 2008) (noting that limited remand to the juvenile court is an available outcome if the record were insufficient to rule on the merits of the ineffective-assistance claim on appeal); *In re G.G.*, No. 04–0933, 2005 WL 2989681, at *1–2 (Iowa Ct. App. Nov. 9, 2005) (describing the juvenile court proceedings concerning the appellant's ineffective-assistance claim on limited remand prior to appeal). We find the record is adequate to address the claim of ineffective assistance of counsel for eliciting vouching testimony here.

To prove the first prong of this claim, C.W. must show counsel's performance fell outside the normal range of competency. *See Straw*, 709 at 133. Starting "with the presumption that the attorney performed his duties in a competent manner," "we measure counsel's performance against the standard of a reasonably competent practitioner." *State v. Maxwell*, 743 N.W.2d 185, 195 195–96 (Iowa 2008). Although counsel is not required to predict changes in the law, counsel must "exercise reasonable diligence in deciding whether an issue is 'worth raising.'" *State v. Westeen*, 591 N.W.2d 203, 210 (Iowa 1999) (quoting

*State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982)). In accord with these principles, we have held that counsel has no duty to raise an issue that has no merit. *State v. Schaer*, 757 N.W.2d 630, 637 (Iowa 2008); *State v. Bearse*, 748 N.W.2d 211, 215 (Iowa 2008) ("Counsel cannot fail to perform an essential duty by merely failing to make a meritless objection.").

Under the second prong, "prejudice is shown when it is 'reasonably probable that the result of the proceeding would have been different.'" *Schaer*, 757 N.W.2d at 638 (quoting *State v. Henderson*, 537 N.W.2d 763, 765 (Iowa 1995)). When analyzing the prejudicial effect of several allegations of ineffective assistance of counsel, we "look to the cumulative effect of counsel's errors to determine whether the [appellant] satisfied the prejudice prong of the *Strickland* test." *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012).

C.W. claims portions of the experts' opinions amounted to vouching for E.W.'s credibility.[2] Specifically, C.W. argues trial counsel should not have elicited the counselor's testimony regarding the counselor's experience with false reporting of sexual abuse by children. The State argues the expert opinions were proper.

A witness may not directly or indirectly opine on the credibility of another witness. *See State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014). Iowa courts "are generally committed to a liberal rule which allows opinion testimony if it will aid the jury in screening the properly admitted evidence to ascertain the truth."

---

[2] Insofar as C.W. argues the testimony was irrelevant, C.W. does not develop the test for irrelevant material or cite applicable authority. Failure to argue and cite authority waives the appeal. Iowa R. App. P. 6.903(2)(g)(3). We decline to consider the claim of irrelevance.

*State v. Myers*, 382 N.W.2d 91, 93 (Iowa 1986). However, this liberal rule does not extend to opinion testimony that vouches for or bolsters the credibility of another witness. *See, e.g.*, *Dudley*, 856 N.W.2d at 676 ("We see no reason to overturn this well-settled Iowa law prohibiting an expert witness from commenting on the credibility of a victim in a criminal sex abuse proceeding."); *see also* Iowa R. Evid. 5.701 (limiting the opinion testimony of a lay witness). "Our system of justice vests the [factfinder] with the function of evaluating a witness's credibility." *Dudley*, 856 N.W.2d at 677 (citing *State v. Hulbert*, 481 N.W.2d 329, 332 (Iowa 1992)). "[V]eracity is not a 'fact in issue' subject to expert opinion." *Hulbert*, 481 N.W.2d at 332.

C.W. argues that under *State v. Pitsenbarger*, opinions regarding the truthfulness of child abuse reports are inadmissible. No. 14-0060, 2015 WL 1815989, at *7 (Iowa Ct. App. Apr. 22, 2015). In *Pitsenbarger*, the expert witness stated five percent of abuse allegations are proven to be false and the "false allegations within that 5 percent are shown to be in divorce or custody situations where one parent might be coaching the other child." *Id.* at *6. A panel of our court held, "[The expert witness's] testimony that only five percent of children lie about sexual abuse and then usually only after coaching by an adult constitutes indirect vouching for T.P.'s credibility." *Id.* at *7.

Here, the counselor testified that she has worked with the school district for twenty-seven years. During cross-examination by C.W.'s counsel, the counselor was asked to describe her experience with false reporting by a child:

> Q. In your experience, are there reasons why a child may make up an allegation? A*. I suppose there would be. I don't know that I've had a child talk to me about it and really not had it be true.*

Q. Okay.  A. So not that I've been told by a child, you know.

Q. Okay.  What sort of things do you feel could be reasons for a child making up an allegation?

(Emphasis added.)  The State objected, claiming the questions were "outside this witness's knowledge base."  C.W.'s counsel clarified that the question was not meant to cause the counselor to "speculate into the specific instances" and the question was asked in general if "there is a reason why a child may make up an allegation like this."  The court allowed the question and answer to proceed, stating, "I don't know that it's relevant, but I'm going to take it at least as an offer of proof and we'll see where we come out with that."  The counselor answered, stating:

I suppose there would be getting attention.  In this kind of an instance, if I had had several kids come talk to me so they would see that it was a time to get attention, *but that wasn't what happened*.  This was like the first child out of the classroom that had come and talked to me so it wasn't—I mean, she sees me for small groups, *it wasn't like she was searching for my attention* so.

(Emphasis added.)

Like in *Pitsenbarger*, the counselor testified to the likelihood of E.W.'s truthfulness and the unlikelihood of E.W.'s attempt to report the abuse for attention-seeking reasons.  These statements are probative of E.W.'s credibility.  C.W.'s counsel followed an apparent trial strategy of challenging E.W.'s inconsistent testimony by failing to object to the testimony of the State's witnesses describing E.W.'s out-of-court statements, which alleged other children were also touched by C.W. and that the touching was under the clothes, skin to skin.  The questions to the counselor about false reporting "in general" do not appear to be part of that trial strategy and resulted in testimony damaging to

C.W. Counsel's questioning of the counselor about reasons a child might make up an allegation led to a direct comment on the child's credibility: "I don't know that I've had a child talk to me about it and really not had it be true." The comment was more egregious than the comments found to be impermissible in recent Iowa Supreme Court precedent. *See State v. Brown*, 856 N.W.2d 685, 688-89 (Iowa 2014) (concluding the sentence, "This examiner agrees this disclosure is significant and that an investigation is clearly warranted," indirectly conveyed to the jury that the child was telling the truth and "crossed the line and vouched for [the child's] credibility"); *State v. Jaquez*, 856 N.W.2d 663, 665 (Iowa 2014) ("By opining [the child's] demeanor was 'completely consistent with a child who has been traumatized, particularly multiple times,' [the witness] was vouching for the credibility of the child."). Counsel's questioning to elicit the vouching testimony was a breach of duty to represent C.W. effectively.

We turn to the prejudice prong of the ineffective-assistance-of-counsel test. In sex-abuse cases where the State's case rests on a witness's credibility, improper vouching is prejudicial. *See, e.g.*, *State v. Tjernagel*, No. 15-1519, 2017 WL 108291, at *8 (Iowa Ct. App. Jan. 11, 2017) (finding prejudice where "the State's case . . . rested entirely on the credibility of the witnesses[,] . . . [t]here was no physical evidence of the alleged abuse and no witnesses other than the complaining witness," and "the expert witnesses' vouching testimony here 'was pervasive—not just a single statement'" (citation omitted)); *Pitsenbarger*, 2015 WL 1815989, at *10 (concluding "the result may have been different if proper objections had been made to exclude the improper testimony" because "the State's case . . . rested entirely on the credibility of the witnesses").

Here the State's case was supported only by E.W.'s testimony, and her credibility was at issue. Like in *Pitsenbarger*, the counselor's statement was a general conclusion about the truthfulness of children where the complaining witness's credibility was the fighting issue between the State and C.W. Here, the counselor went on to say children might lie to gain attention but that E.W. was not seeking attention, connecting her general testimony that children do not lie to E.W.

Moreover, the error was important to the juvenile court's finding of delinquency. While the State argues the testimony was not prejudicial to C.W., the court acting as factfinder cited the counselor's testimony twice in its adjudicatory order. The court found, "In her 27 years in her position [the counselor] has not had a child make false allegations of sexual touching." Later in its order, the juvenile court discussed the facts supporting E.W.'s credibility, noting, "[The counselor] also testified that she's never had a student made [sic] allegations similar to E.W.'s, and since she had counseled students at E.W.'s school for 27 years, it is unlikely any allegations are swirling around without her knowledge." The demonstration of prejudice to C.W. is strong. The State relied on the credibility of E.W.'s testimony, and the juvenile court utilized the counselor's statement about false reporting to reach its determination that E.W. was credible and C.W. was delinquent. *But see State v. Prince*, No. 16-1455, 2017 WL 3525152, at \*2 (Iowa Ct. App. Aug. 16, 2017) (holding improper vouching testimony was *not* prejudicial where the court did not rely on the statement in making its determination of guilt). Based on the court's reliance on the improper testimony regarding E.W.'s credibility, there is a reasonable

probability the outcome of the adjudication would have been different. The counselor's improper vouching testimony prejudiced C.W.

## B. Sufficiency of the Evidence.

C.W. claims the court erred in overruling his motion for judgment of acquittal because the State failed to prove the charged crime. Specifically, C.W. argues there was not enough evidence to demonstrate the sexual nature of the touch or to prove a sexual act occurred. C.W. also claims E.W.'s testimony was inconsistent and not credible.[3] The State argues there is sufficient evidence to support the charge of sexual abuse in the second degree because circumstances surrounding the incident illustrate the sexual nature of the touch.

Juveniles charged with crimes are presumed innocent. "The State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent act." *In re D.S.*, 856 N.W.2d 348, 351-52 (Iowa 2014). Appellate review of delinquency adjudications requires heightened review for policy reasons. "Neither statutory nor constitutional provisions guarantee juveniles the right to a jury trial. This important distinction between adult and juvenile proceedings favors a more in-depth appellate review of the facts supporting and opposing an adjudication." *A.K.*, 825 N.W.2d at 51 (citations omitted.) "[T]he lack of a right to jury trial renders juvenile proceedings especially vulnerable to inaccurate fact finding and unfair resolutions because they are presided over by a single judge." *Id.* "We therefore cannot rubber stamp what has come before; it is our task to ensure the State has come forth with the quantum and quality of

---

[3] C.W. also argues the State failed to prove his age. The age of the alleged perpetrator is not an element of the charged offense.

evidence necessary to prove each of the elements of its case." *In re R.M.*, No. 17-0174, 2017 WL 1278382, at *1 (Iowa Ct. App. Apr. 5, 2017).

The State charged C.W. with sexual abuse in the second degree, a delinquent act.[4]  *See* Iowa Code §§ 232.2(12), 709.1, 709.3.  To prove sexual abuse in the second degree, the State must show C.W. (1) performed a sex act with the victim; and (2) the victim was under the age of twelve at the time of the sex act.  *Id.* § 709.3(1)(b).  A "sex act" includes "[c]ontact between the finger or hand of one person and the genitalia or anus of another person."  *Id.* § 702.17.

The act must be sexual in nature, which "can be determined by the type of contact and the circumstance surrounding it."  *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994).  The circumstances considered would plainly include contact "made to arouse or satisfy the sexual desires of the defendant or the victim."  *Id.* For example, evidence showing a defendant "rubbed the victim's genitalia, placed the victim's hand on the defendant's genital and ejaculated" establishes the sexual nature of the contact.  *See State v. Phipps*, 442 N.W.2d 611, 612 (Iowa Ct. App. 1989); *see also State v. Thede*, No. 15-0751, 2016 WL 5930417, at *4 (Iowa Ct. App. Oct. 12, 2016) (finding defendant making lustful comments, providing of alcohol to the victim, purchasing lingerie and sex toys for the victim, and discussing the victim's sex life contributed to the sexual nature of the contact).

In determining the sexual nature of the contact

---

[4] "'Delinquent act' means: The violation of any state law or local ordinance which would constitute a public offense if committed by an adult except any offense which by law is exempted from the jurisdiction of this chapter." Iowa Code § 232.2(12).

> [o]ther relevant circumstances include but are not limited to the relationship between the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and victim before and after the contact.

*Pearson*, 514 N.W.2d at 455. Contact that is incidental and nonsexual in nature is not a sex act. *See, e.g., id.* ("[T]he contact between an adult and a child bouncing on his or her lap would not be sexual in nature unless the circumstances surrounding it suggested it was."). The lack of an obvious sexual motivation, however, does not preclude a finding of sexual abuse if the overall context reveals a lascivious nature underlying the contact. *See State v. Howard*, 825 N.W.2d 32, 44 (Iowa 2012). Nor does the "lack of skin-to-skin contact alone . . . as a matter of law, put defendant's conduct outside the definition of 'sex act.'" *Phipps*, 442 N.W.2d at 613.

On our de novo review, we do not consider the inadmissible vouching testimony described in Part A of our discussion. *A.K.*, 825 N.W.2d at 51.[5] Even without that erroneously admitted evidence, probative on the issue of the credibility of E.W., we find sufficient evidence the touching was sexual in nature. In doing so, we consider the evidence of the uncharged touching as revealing a pattern of nonaccidental touching.

---

[5] We recognize the evidentiary issue here was raised in the context of ineffective assistance of counsel and differs from *A.K.* in that respect.

**IV. Conclusion**

Counsel was ineffective for eliciting testimony that vouched for the credibility of the child witness, and the vouching prejudiced C.W. Because this issue is dispositive, we do not consider the other claims of error.

**REVERSED AND REMANDED FOR NEW TRIAL.**

Vaitheswaran, P.J., concurs. McDonald, J., dissents.

**MCDONALD, J.** (dissenting)

I respectfully dissent for two reasons. First, remand for retrial is not the correct disposition with respect to the vouching testimony; instead, this court should review the sufficiency of the evidence excluding the inadmissible evidence and either affirm the adjudication or reverse the adjudication on the merits. Second, there is insufficient evidence in support of the adjudication. Because there is insufficient evidence to support the adjudication, I would vacate the judgment of the district court and remand this matter for dismissal of the delinquency petition.

"Delinquency proceedings are 'special proceedings that serve as an alternative' to the criminal prosecution of a child." *In re D.S.*, 856 N.W.2d 348, 351 (Iowa 2014) (citation omitted). "The primary goal of juvenile proceedings is to further the best interests of the child—not to punish but instead to help and educate the child." *In re A.K.*, 825 N.W.2d 46, 51 (Iowa 2013). "We presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent act." *Id.* at 49; *see* Iowa Code § 232.47(10) (2016).

Our review of delinquency adjudications is de novo. *See A.K.*, 825 N.W.2d at 49. In conducting de novo review of delinquency adjudications, we afford the juvenile court little to no deference. Indeed, appellate review of delinquency adjudications requires heightened review for policy reasons. "Neither statutory nor constitutional provisions guarantee juveniles the right to a jury trial. This important distinction between adult and juvenile proceedings favors a more in-depth appellate review of the facts supporting and opposing an

adjudication." *Id.* at 51 (citations omitted). "[T]he lack of a right to jury trial renders juvenile proceedings especially vulnerable to inaccurate fact finding and unfair resolutions because they are presided over by a single judge." *Id.* "We therefore cannot rubber stamp what has come before; it is our task to ensure the State has come forth with the quantum and quality of evidence necessary to prove each of the elements of its case." *In re R.M.*, No. 17-0174, 2017 WL 1278382, at *1 (Iowa Ct. App. Apr. 5, 2017).

Here, the State was required to prove C.W. (1) performed a sex act with the victim; and (2) the victim was under the age of twelve at the time of the sex act. *See* Iowa Code §§ 232.2(12), 709.1, 709.3. As relevant here, a "sex act" is defined as "[c]ontact between the finger or hand of one person and the genitalia or anus of another person." Iowa Code § 702.17(3). Mere physical contact between the finger or hand of one person and the genitalia or anus of another person is not enough. *See, e.g.*, *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994) ("[T]he contact between an adult and a child bouncing on his or her lap would not be sexual in nature unless the circumstances surrounding it suggested it was."). Instead, the State must prove beyond a reasonable doubt the act was sexual in nature, which "can be determined by the type of contact and the circumstances surrounding it." *Id.* The circumstances considered would plainly include contact "made to arouse or satisfy the sexual desires of the defendant or the victim." *Id.* For example, evidence showing a defendant "rubbed the victim's genitalia, placed the victim's hand on the defendant's genital and ejaculated" establishes the sexual nature of the contact. *Id.* (citing *State v. Phipps*, 442 N.W.2d 611, 612 (Iowa Ct. App. 1989)); *see also State v. Thede*, No. 15-0751,

2016 WL 5930417, at *4 (Iowa Ct. App. Oct. 12, 2016) (finding defendant's lustful comments, providing alcohol to victim, purchasing lingerie and sex toys for the victim, and discussing victim's sex life contributed to the sexual nature of the contact).

In reviewing the sufficiency of the evidence to support this delinquency adjudication, the first step is to determine what evidence should be considered in determining whether the State met its evidentiary burden. When the district court commits evidentiary error in admitting certain evidence, the matter should not be remanded for retrial. Instead, because our review is de novo, we are required to review the evidence anew without considering the inadmissible evidence. *See A.K.*, 825 N.W.2d at 51 ("We note that de novo review of the evidence may promote efficiency when there is an evidentiary error below because we can review the evidence anew, without considering the inadmissible evidence, to determine whether the State has proven the child committed the acts beyond a reasonable doubt."). When an evidentiary challenge is raised via an ineffective-assistance claim due to the failure of counsel to preserve error on the evidentiary challenge, as is the case here, the result should not be any different. I thus disagree with the majority's disposition of this case. The process for resolving an ineffective-assistance-of-counsel claim in a delinquency proceeding is for limited remand to the district court to create a record on the claim so it can then be resolved on direct appeal. Here, the majority resolves the claim on direct appeal. Limited remand is thus not necessary. Because the nature of the challenge was a challenge to the admission of certain evidence, the remedy should be to

disregard the challenged evidence when reviewing the sufficiency of the evidence rather than remand for retrial.

Regardless, I also dissent because there is insufficient evidence supporting the adjudication. E.W. is not a credible witness. E.W. initially reported a prior incident in which C.W. touched her breasts, butt, and vagina in the basement of C.W.'s home. She reported he put his hands under her jeans when he touched her vagina. At trial, when testifying about this prior incident, she testified he touched her butt over her clothes and "that was it."[6] With respect to the offense conduct at issue, when E.W. first reported the alleged abuse, she reported C.W. put his hand inside her pants and underpants and touched her vagina. E.W. also reported C.W. did this to C.W.'s sister and E.W.'s two sisters.

---

[6] C.W. claims his counsel was ineffective in failing to object to this evidence. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Iowa R. Evid. 5.404(b). The evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "In determining whether to admit prior-bad-acts evidence, we rely on a three-step analysis." *State v. Putman*, 848 N.W.2d 1, 8 (Iowa 2014). "A court must first determine whether the evidence is relevant to a legitimate, disputed factual issue." *Id.* at 9. There also "must be clear proof the individual against whom the evidence is offered committed the bad act or crime." *Id.* "If the evidence is relevant to a legitimate and disputed factual issue, and the clear-proof requirement is satisfied, the court must determine whether the evidence's 'probative value is substantially outweighed by the danger of unfair prejudice to the defendant.'" *Id.* (citation omitted).

The clear proof requirement was not satisfied in this case. "In assessing whether clear proof of prior misconduct exists, the prior act need not be established beyond a reasonable doubt, and corroboration is unnecessary." *Id.* Many of our cases state the clear proof requirement is satisfied upon the testimony of a victim regarding the prior act. The statement is incomplete. Each of the cases originates with *State v. Jones*, 464 N.W.2d 241, 243 (Iowa 1990), in which the court stated a victim's testimony about "prior instances of sexual abuse" can satisfy the clear proof requirement *if the testimony is "sufficiency credible and detailed."* To hold otherwise would allow a not credible witness, as is the case here, bolster her credibility by bootstrapping a prior alleged incident of abuse to the offense conduct at issue. In any event, we need not resolve this challenge because there is insufficient evidence supporting the adjudication even considering the evidence.

The Iowa Department of Human Services immediately initiated a child protective services investigation with respect to C.W.'s sister. C.W. adamantly denied the conduct. C.W.'s sister adamantly denied any sexual contact, told the investigator E.W. was always lying, and stated she hoped she would get to play with her brother, C.W. E.W.'s sisters also denied any sexual contact. The allegation of sexual abuse was not confirmed. At the time of trial, E.W.'s testimony was very different from her initial report. She testified C.W. touched her butt and vagina over her clothes and testified C.W. did not touch her sisters. The stark contrast between E.W.'s first version of both events and her trial testimony regarding both events casts great doubt on the entirety of her testimony.

Even assuming there was some sort of touch, the State simply failed to come forth with the quantum and quality of evidence sufficient to prove the elements of its case. This is the relevant testimony:

> Q. What happened while you were in his bedroom? A. We were just playing a game.
> Q. Do you remember what game you were playing? A. No.
> Q. And what happened that made you uncomfortable? A. He touched me again.
> Q. And where were you at or sitting when that happened? A. At the end of the bed.
> Q. And so did he move closer to you? A. Uh-huh.
> Q. And where did he touch you? A. My butt and my vagina.
> Q. And was that over your clothes or under your clothes? A. Over.
> Q. Did he say anything to you during that time? A. No.
> Q. And where was your sister or what was she doing? A. She was—She fell off the bed, but she was sitting at the end of it and she fell off.
> Q. And do you remember anything else about what happened in that bedroom? A. No.
> Q. And do you remember what time of year this happened in 2014? A. No.
> Q. Is there any other instance that you remember that made you feel uncomfortable? A. No.

On the relevant record, the State failed to prove beyond a reasonable doubt that C.W. committed a sex act against E.W. Although E.W. testified C.W. touched her "vagina," it is clear C.W. did not touch E.W.'s vagina because E.W. testified the touching occurred over her clothes. E.W.'s testimony is best interpreted to mean C.W. touched her butt and her vaginal area or crotch over her clothes. The distinction is important. Without much context, sexual purpose can be readily inferred from touching the vagina. Without additional context, sexual purpose cannot be readily inferred, if inferred at all, from touching the butt or crotch over clothing.

There is no context from which we can conclude beyond a reasonable doubt that C.W. touched E.W. with a sexual purpose. Relevant considerations include

> but are not limited to the relationship between the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and victim before and after the contact.

*Pearson*, 514 N.W.2d at 455. In this case, the juvenile and the victim have no relationship from which one could infer a sexual purpose. In this case, the victim testified her sister was in the room next to her at the end of the bed at the time of the touching. The presence of another person in the room immediately next to the victim militates against an inference the touching was purposeful and sexual in nature. In this case, there is no evidence regarding the length of the contact. Did the alleged touch last for a half-second or several minutes? In the former case, we could infer the touch was nonsexual. In the latter case, we could infer

the touch was sexual. The record provides no guidance. In this case, there is no evidence regarding the nature of the contact from which we could infer sexual purpose. Was it a rub, pinch, punch, or poke? The record is silent. In this case, there is no evidence regarding the purposefulness of the contact. Was the touch intentional or accidental? With three children playing a game on a bed or in a bedroom, it is equally likely from the testimony received that the touch was incidental as intentional. *See id.* at 457 (Carter, J., concurring in part and dissenting in part) ("I believe that it is axiomatic that any time two persons are moving about in close proximity to one another innocent contact may occur between sexual parts."). In this case, the record is silent on the conduct of the juvenile and the victim after the alleged touching incident. We can infer nothing from their conduct. In this case, the accused is a child with some mental limitations. Generally, "it is not justified to impute the same intent into a child's action that one could reasonably impute into the actions of an adult." *In re E.R.E.*, 614 N.E.2d 1367, 1369 (Ill. App. Ct. 1993). The absence of any evidence regarding these factors is fatal to the State's case.

The State implicitly has acknowledged the paucity of the evidence in support of the adjudication. During oral argument, the State contended once the victim testified she was touched, it was then the defendant's burden to provide an innocent explanation. I respectfully disagree. While the State certainly cannot be expected to introduce evidence to negate any and every possible nonsexual explanation for the touch, it cannot shift its burden of coming forth with the quantum and quality of evidence sufficient to prove beyond a reasonable doubt that a sex act occurred. Where the sexual nature of the act is not apparent, this

will require the State to introduce into evidence sufficient contextual detail from which such an inference can inescapably be drawn.  It failed to do so here.  *See id.* (reversing delinquency adjudication of criminal sexual abuse where "there [was] no testimony regarding the length of the alleged touching" and "the touching allegedly occurred over the victim's underwear and while the victim's pants were on").

For the foregoing reasons, I respectfully dissent.  I would vacate the judgment of the district court and remand this matter for dismissal of the delinquency petition.