STATE of Iowa, Appellee,

v.

John Frank ROTH, Appellant.

No. 85–663.

Supreme Court of Iowa.

April 15, 1987.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett and Ann DiDonato, Asst. Attys. Gen., and Lee W. Beine, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

A jury found defendant John Frank Roth guilty of first-degree murder, *see* Iowa Code sections 707.1 and 707.2 (1983), and district court entered the appropriate judgment. Defendant appealed, asserting the court erred in not allowing him to cross-examine his wife and his son, both State witnesses, concerning her twenty-year-old murder conviction. We transferred the case to the court of appeals, which reversed the conviction and remanded for new trial. Upon further review we vacate the decision of the court of appeals and affirm the district court judgment.

Roth does not challenge the sufficiency of the evidence to sustain his conviction. To place the issues he raises in perspective, however, we briefly summarize the facts the jury could have found under this record.

Martien Marie Harper (Tina) was murdered on the night of December 26, 1984, or in the early morning hours of December 27, 1984. She was last seen alive by anyone other than Roth at about 8 p.m. on December 26. At that time, Roth accompanied Tina, who was his stepdaughter, as she left the Roth home. Roth returned about a half hour later. Tina was not with him.

Later that evening Roth and his wife Sharon, Tina's mother, left the house to search for Tina. Around 10:45 p.m., Roth returned home without Sharon. He picked up and loaded his son John's .22 caliber rifle and then left, telling John he was going to look for Tina and was going hunting. Later that night a car similar in color and shape to Roth's car was seen by a prosecution witness on the gravel road where Tina's body subsequently was found. The following day Roth told John not to say anything about the gun.

Early the next morning, December 27, 1984, Tina's body was found on the road near Clarence, Iowa. An autopsy revealed she had been shot seven times—three times in the chest, three times in the head, and one time in the base of the skull. A State expert established the bullets recovered from Tina's body had been fired from the .22 caliber rifle belonging to John and carried by Roth the previous night. December 28, 1984, the police searched Roth's basement and recovered the rifle and several boxes of .22 caliber shells, which Roth had attempted to hide.

Before his arrest Roth denied all knowledge of the murder. Nor did he ever claim to the police, while under questioning, that his wife, Sharon, had any connection with the killing. He falsified a story about a

sister's accidental death in Nebraska and prepared to leave town. Further, although he had not been told that a .22 caliber rifle had been the murder weapon, Roth mentioned several names as suspects to a police officer, and indicated one of them owned such a gun.

Law officers eventually arrested Roth and charged him with first-degree murder. After being held in the Cedar County jail for forty-eight days he attempted to escape, carrying a handmade knife, but was quickly recaptured.

The State filed a pretrial motion in limine seeking to prevent Roth from presenting any evidence concerning Sharon's 1965 second-degree murder conviction for the death of Walter Adams. Roth filed a resistance, asserting this evidence would substantiate that Sharon had the predisposition, ability, and tendency to commit such a crime, and, having committed murder, would be more likely to do so again. He argued the evidence he sought to establish would "present to the jury a fact which the State cannot deny and [which] would bear directly on the issue ... whether ... [Tina] was murdered by John Roth or Sharon Roth."

Roth's resistance further asserted his belief, based on Sharon's deposition, that she would testify at trial that she had never fired a gun of any kind, and that it was critical to his case that he establish her capability and knowledge in using a firearm by examining her concerning the 1965 murder, in which a .22 caliber handgun was used. Additionally, he should be permitted to impeach her with evidence of the conviction. Finally, Roth contended he should be permitted to ask his son John, who would be a State witness, whether he was aware of his mother's murder conviction and whether he was scared of her, in order to establish John was lying because of fear of Sharon.

Trial court granted the State's motion in limine, and reaffirmed that ruling just before Roth offered his evidence in the trial.

On appeal Roth contends trial court erred in restraining him from eliciting testimony concerning Sharon's 1965 murder conviction. He relies on the same grounds, except that he no longer contends such evidence would be admissible to demonstrate her predisposition to commit the murder under scrutiny here.

I. *Knowledge and Expertise.*

The State's motion concedes that in 1965 Roth's wife Sharon, whose former married name was Hildebrant, was convicted of second-degree murder. Her conviction was summarily affirmed in this court under the old "clerk's transcript" procedure. *See State v. Hildebrant,* 136 N.W.2d 265 (Iowa 1965) (per curiam). Sketchy details of that crime emerge in our decision in *State v. Miller,* 259 Iowa 188, 191–94, 142 N.W.2d 394, 396–98 (1966). We affirmed the conviction of Miller, whom the State tried as an accomplice. The victim, Walter Adams, died from a bullet fired from a cheap, .22 caliber foreign-made revolver.

Under cross-examination as a State witness at trial, Sharon testified as she did on pretrial deposition: that she had never fired a "gun of any kind." Roth argues here, as he did in resistance to the State's limine motion, that the court should have allowed him to probe into the 1965 murder so that he could show Sharon's knowledge and experience with firearms and thus support his defense that she murdered Tina.

We preliminarily note that had Roth prevailed in his resistance to the limine motion, this trial rapidly could have disintegrated into two trials—the second controversy relating to the identity of the person who fired the revolver in the Adams murder. Our decisions do not indicate that either Sharon or Miller testified in their respective cases relating to that murder. The *Miller* decision does reflect the evidence relating to the killer's identity was circumstantial, and that Miller was convicted largely on his own statements to investigating officers that placed him and Sharon together when the murder weapon was bought and in the subsequent flight after he took the victim's truck. *Id.* at 192–94, 142 N.W.2d at 397–98. In her pretrial deposition in this case Sharon testified it was Miller who shot Adams, and her answer may well have been the same had Roth

been allowed further cross-examination on the subject.

■ Roth's contention that he should have been permitted further cross-examination relating to Sharon's 1965 conviction implicates the long-established principle that evidence of other crimes will be excluded if relevant only to show an individual is a bad person capable of committing bad acts. *State v. Spargo*, 364 N.W.2d 203, 208 (Iowa 1985); *State v. Mendiola*, 360 N.W.2d 780, 782 (Iowa 1985); *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979). This general rule is now codified in Iowa Rule of Evidence 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Iowa R. Evid. 404(b). It should be observed, however, that rule 404(b) "also illustrate[s] some but not all situations in which evidence relevant to establish some legitimate issue in the case is not rendered inadmissible because it also reveals character or traits of character." *State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987).

■ Our cases establish that under rule 404(b) evidence of other crimes may be admissible (1) if the evidence is relevant to a legitimate issue involved in the case, and (2) there is clear proof the individual against whom the evidence is offered committed the prior crime. *State v. Emerson*, 375 N.W.2d 256, 259–60 (Iowa 1985). Further, when similarity is essential to establish the relevancy of the evidence with respect to the issue relied upon, " '[t]he other offense must be reasonably similar to the crime charged.' " *Id.* at 260 (quoting *State v. Cuevas*, 282 N.W.2d 74, 80 (Iowa 1979)); *see United States v. Earley*, 657 F.2d 195, 198–99 (8th Cir.1981).

Although the principle codified in Iowa Rule of Evidence 404(b) has surfaced frequently with respect to the conduct of accused persons in criminal trials, this rule is equally applicable to witnesses generally. Iowa R. Evid. 404(b); *see State v. Brewer*, 247 N.W.2d 205, 213 (Iowa 1976).[1]

■ Once trial court concludes the evidence is relevant to an issue in the case, it must balance the probative value of the evidence against its potential prejudice. *State v. Kern*, 392 N.W.2d 134, 136 (Iowa 1986). Such balancing is required by Iowa Rule of Evidence 403 which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Iowa R. Evid. 403; *see Barrett*, 401 N.W.2d at 186. In determining the ultimate admissibility of evidence trial court exercises its sound discretion. *Emerson*, 375 N.W.2d at 260; *State v. Zaehringer*, 280 N.W.2d 416, 419–20 (Iowa 1979). We will reverse trial court's determination on the issue of admissibility only when we find a clear abuse of discretion. *Kern*, 392 N.W.2d at 136.

In light of the foregoing principles we examine Roth's claim he should have been permitted to show Sharon's prior murder conviction. He asserts this would be relevant to establish her knowledge and experience with firearms, and by inference, her ability to use the rifle that killed Tina.

■ On the record before us, we cannot conclude trial court abused its discretion in excluding evidence of the 1965 murder conviction. Assuming Roth should be permitted to additionally prove, beyond the mere fact of Sharon's conviction, that the .22 caliber foreign-made revolver referred to in the *Miller* case was the weapon that killed Adams and that Sharon was the trigger person, a hard question of relevancy re-

---

1. In *Brewer*, 247 N.W.2d at 213, we discussed and applied the witness-protecting principles drawn from *State v. Martin*, 217 N.W.2d 536, 542 (Iowa 1974), which now are codified in Iowa Rule of Evidence 609.

mains. In this case the evidence shows the weapon used in Tina's murder was a tube-loading automatic rifle.

Neither on the limine motion nor at any subsequent time at trial did Roth offer any record to demonstrate a reasonable link between the knowledge required to operate a .22 caliber revolver and that necessary to operate a .22 caliber tube-loading automatic rifle.[2] *See Cuevas*, 282 N.W.2d at 80. In view of the basic prohibition in Iowa Rule of Evidence 404(b), we think it became Roth's burden to show the relevancy link between the old conviction and Sharon's ability to load and operate the particular weapon used in Tina's murder. *See State v. Hahn*, 259 N.W.2d 753, 759 (Iowa 1977); *State v. Ritchison*, 223 N.W.2d 207, 212–13 (Iowa 1974).

■ We are of the further opinion, given the questionable relevancy of the 1965 conviction, that trial court properly could have excluded this evidence under the balancing process articulated in Iowa Rule of Evidence 403. In any case in which evidence of other crimes is offered, trial court must consider the strong tendency on the part of the jury to use the evidence for an improper purpose. Specifically, the jury may believe that merely because this person committed a crime before he or she is likely to have done so again. *See State v. Walsh*, 318 N.W.2d 184, 187 (Iowa 1982). And, while such potential prejudice generally flows from the State's attempt to use other crime evidence against a defendant, Roth has no greater privilege than the State to present evidence of other crimes against Sharon, if the potential for improper consideration of that evidence substantially outweighs any probative value it may have. Here, given the questionable probative value of the twenty-year-old conviction, trial court properly could conclude the inherent possibility for misuse, and thus prejudice, outweighed the evidence's probative value.

Further, while not directly cumulative, the record contains recent evidence of Sharon's use of firearms. Defendant himself testified Sharon in 1983 had fired a .12 gauge shotgun at a truck he and his mother were riding in. This testimony was corroborated by other evidence. Roth's mother testified they practiced shooting on her farm. From her description of these incidents, Roth's mother clearly was not speaking of a handgun.

Like the 1965 conviction, this evidence showed no direct use or knowledge of .22 caliber, tube-loading, automatic rifles. However, this evidence was at least equally probative of her general familiarity with firearms. In addition, this evidence was much less remote and was not evidence of other crimes. Its admission diminished any strength in Roth's arguments he should be permitted to prove Sharon's 1965 conviction to show her knowledge and experience in the use of firearms.

Roth's reliance on *State v. Hood*, 346 N.W.2d 481 (Iowa 1984), is misplaced. There one of two codefendants, jointly tried for murder, attempted to infer the other was the killer by testifying as to his present ownership and use of guns. Although we noted this evidence "did bear to some extent" on the "desired inference" we then held:

> We conclude, however, that no reversible error occurred here due to the evidence otherwise properly in the record as to Hood's usual access to and possession of firearms.

*Id.* at 484. The *Hood* decision, involving a different factual situation, does not support Roth's contentions here. Rather, the case illustrates the flexibility allowed the trial court's rulings in such circumstances.

In light of its questionable probative value, its remoteness, the potential for misuse, and the presence in the record of probative evidence of Sharon's recent use of firearms, we conclude trial court did not abuse its discretion in excluding evidence of Sharon's 1965 murder conviction.

## II. *Impeachment.*

At trial Roth elicited cross-examination testimony from Sharon that she had never

---

**2.** Roth's unverified resistance to the State's motion in limine merely alleged his belief "that Sharon Roth will testify that she was convicted of murder in 196[5] where an individual was shot with a .22 caliber pistol and that she did not testify and deny that shooting in that case."

fired any kind of firearm in her life. He made no offer or record at that time, but now argues he should not have been restrained by the limine ruling from then offering evidence of the 1965 murder to impeach this testimony.

◼ Ordinarily a party may contradict and discredit an adverse witness by presenting evidence showing the facts were other than as indicated by the testimony of the witness. *State v. Odem,* 322 N.W.2d 43, 45 (Iowa 1982). Prior convictions may in certain circumstances be used as impeachment evidence. *See State v. Goff,* 315 N.W.2d 768, 769 (Iowa 1982).

◼ The offer of impeachment evidence, however, is not without limits. To be admissible, impeachment evidence must have been admissible for some proper purpose independent of the contradiction. *State v. Blackford,* 335 N.W.2d 173, 176 (Iowa 1983). Otherwise the impeachment evidence goes only to a collateral issue and is inadmissible. Evidence of two types is admissible independent of contradiction. First, the evidence may be admitted if relevant to some legitimate issue in the case. Second, the evidence is admissible if it is relevant to establishing or undermining the general credibility of the witness being impeached. *State v. Gilmore,* 259 N.W.2d 846, 853 (Iowa 1977).

Evidence of Sharon's 1965 conviction was not admissible under the second category of independently admissible evidence. Iowa Rule of Evidence 609 specifically addresses the offer of other crime evidence for the purpose of attacking a witness's overall credibility.

◼ Under rule 609 evidence of other crimes is admissible only if the crime involved dishonesty or false statement, not more than ten years have passed since the conviction, and its probative value outweighs its prejudicial effect. Iowa R.Evid. 609(a)–(b). If more than ten years have elapsed since the conviction or the release of the witness from confinement imposed for the conviction, it may be admitted only if the probative value of the conviction supported by specific facts and circum-

stances substantially outweighs its prejudicial effect. Iowa R.Evid. 609(b). The proponent of the evidence bears the burden to show the probative value of the evidence outweighs its prejudicial effect. *See State v. Hackney,* 397 N.W.2d 723, 727 (Iowa 1986).

Here, Sharon's prior conviction did not involve dishonesty or false statement, far more than ten years had elapsed since her incarceration, and Roth made no showing the probative value of the conviction substantially outweighed its prejudicial effect. It follows the evidence of Sharon's twenty-year-old conviction was not admissible on that basis.

We are left with the question whether the independent admissibility of the 1965 murder conviction may be based on its relevance to a contested issue in the case. *See Gilmore,* 259 N.W.2d at 853. Here, Sharon's knowledge of firearms was an issue involved in establishing Roth's defense. *See id.* at 853–54.

◼ Nonetheless, we again find no abuse on the part of trial court in excluding this evidence. While the 1965 conviction arguably contradicts Sharon's statement she has never fired a firearm, that contradiction does not make it admissible. Its admissibility turns on its relevance to, and status as, independent proof of Sharon's knowledge of firearms.

Here, our analysis tracks with what we already have written with respect to the admissibility of this evidence under Iowa Rule of Evidence 404(b). Assuming relevance and questionable probative value, the 1965 conviction still is subject to exclusion under rule 403. We find no abuse of discretion in excluding the evidence when offered for impeachment purposes.

### III. *Testimony of Roth's Son.*

At trial, John, Roth's son, was one of the State's key witnesses. His testimony tied Roth to the murder weapon near the time of Tina's death. John's testimony also demonstrated Roth's attempt to hide the murder weapon the day following the murder.

In cross-examining John, Roth attempted to show John was afraid of his mother and, because of the fear, would lie for her. Under questioning, John admitted he did not tell the police about Roth's activities until encouraged to do so by Sharon. John also testified he was aware Sharon had once attempted suicide and that this scared him. John also acknowledged his mother was sometimes violent and previously had been committed to a mental institution. Finally, John related an incident occurring several years earlier in which Sharon repeatedly rammed her car into a truck in which he and Roth were riding. This incident also frightened John.

The only area the limine ruling precluded Roth from discussing with John was Sharon's 1965 conviction. That conviction, however, was entered seven years before John was born, and Roth made no assertion, record, or offer that John was aware of the 1965 conviction.[3]

Given the remote nature of the 1965 conviction, its speculative impact on John's cross-examination, its potential for misuse by the jury, coupled with the presence of more recent evidence that was of greater probative value on the issue of fear and was unlikely to be misused, we find trial court committed no abuse of discretion in excluding this evidence with respect to John's cross-examination.

IV. *Constitutional Right to Fair Trial.*

Finally, Roth asserts trial court's actions in excluding evidence of Sharon's 1965 conviction denied him his constitutional right to defend against the State's accusations. Passing the question whether error has been preserved on this constitutional issue, *State v. Farni*, 325 N.W.2d 107, 109 (Iowa 1982), we disagree.

Our de novo review of the record convinces us Roth was given a fair opportunity to present his defense. Other than this single piece of remote, minimally probative, and potentially prejudicial evidence,

Roth was able to present and develop his defense. He was allowed ample opportunity to examine all witnesses and present any other relevant evidence. We find Roth received a fair trial.

Finding no reversible error, we vacate the court of appeals decision and affirm Roth's judgment.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.

---

**3.** Roth's resistance to the motion in limine asserts he "should be allowed to inquire of John ... whether or not he is aware of his mother's prior murder conviction and whether he is scared or fearful of her because of the prior conviction of murder."