**IN THE COURT OF APPEALS OF IOWA**

No. 18-2083
Filed December 18, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WILDOR JUSTE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Wildor Juste appeals his conviction of second-degree sexual abuse.
**AFFIRMED.**

James S. Nelsen, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Heard by Doyle, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Wildor Juste appeals his conviction of second-degree sexual abuse. Juste argues the district court erred in (1) admitting testimony alleged to have improperly vouched for the complaining witness, (2) admitting hearsay statements alleged to bolster out-of-court statements made by the complaining witness, (3) submitting a jury instruction naming a date range in which the alleged abuse took place, (4) denying access to department of human services (DHS) records relied upon by testifying witnesses, and (5) admitting an exhibit and related testimony over hearsay objections.

**I.      Background Facts and Proceedings**

In January 2015, Juste resided with his paramour, P.L., and her child, who made allegations of sexual abuse at the hands of Juste.[1] The child alleged the sexual abuse took place on more than one occasion while the child lived with the couple in Iowa and previously in North Carolina. The allegations arose following a "take charge of your body" presentation at the child's school when a survey conducted by the presenter and answered by the child was turned over to the school. The survey indicated the child had been touched inappropriately and, in a comment, the child wrote "my dad."[2] A school guidance counselor interviewed the child regarding the survey answers, at which time the child identified Juste as the man described as "my dad" on the survey. The guidance counselor reported the allegations to DHS. The child was subjected to a forensic interview and physical

---

[1] Testimony at trial indicates Juste and P.L. were married by the time of trial in August 2018.

[2] The record shows Juste is not the biological father of the child but the child considered Juste a father figure.

examination. During the interview, the child made allegations of sexual abuse including both digital and genital penetration. The physical examination included the collection of specimens for possible DNA testing. After further investigation, charges were filed against Juste in May 2016 for sexual abuse in the second degree in violation of Iowa Code section 709.3 (2015).

Juste filed four motions in limine in February 2018. The first motion sought to exclude the sexual-assault kit, an information form contained therein, all notes and testimony stemming from the kit created during the child's physical examination, and buccal swabs provided by the defendant and presented through an employee of the State crime lab. The second motion in limine sought to exclude testimony regarding certain prior statements made by the child to various DHS and school personnel. The third motion sought to exclude testimony related to any allegations stemming from conduct that occurred in North Carolina. The fourth motion sought to exclude testimony regarding Juste's discussions related to a polygraph examination and the interview itself. Hearing on the motions took place in July.[3] All four motions were denied.[4]

The case proceeded to trial in August. During trial, a number of witnesses, including the child, testified. During the child's testimony, the State moved to admit the child's survey into evidence. Juste objected, arguing the exhibit was hearsay. The court admitted the evidence over the objection. Juste also objected when the

---

[3] The State also filed a motion in limine. It is not contested on appeal.
[4] The fourth motion, concerning the polygraph, was resolved as moot. The State agreed to not call the officer who performed the polygraph or to mention any offer to complete a polygraph examination.

child was asked if the child told the truth and argued the answer would bolster the child's testimony. The court overruled the objection.

The guidance counselor from the child's school testified regarding the child's survey and discussions with the child following her receipt of the survey answers. Juste objected, arguing the counselor's testimony on how the child answered survey questions was hearsay and any motive the child had to fabricate the allegations arose prior to the initial disclosure of the abuse. Juste also argued the statements constituted improper vouching supporting the child's credibility. The district court overruled the objection and admitted the statements to explain the counselor's conduct in reaction to the statements and respond to the recent-fabrication allegation. However, the court cautioned the attorneys to carefully tailor the in camera examination to avoid vouching.

A nurse practitioner conducted the physical examination of the child. She testified to a number of statements the child made to her during the examination. Juste raised a standing hearsay objection on that subject matter and whether the statements were admitted as statements made for medical diagnosis. When asked about her examination of the child's genitals, the nurse stated the results were "normal" and "for children who have or anyone actually for sexual abuse many times 95[%] or higher the results are normal as far as when we look at the genitalia." Juste objected. Argument took place outside the presence of the jury, during which Juste's counsel eventually stated, "I think the jury has been poisoned by this testimony and I would prefer a mistrial." Juste argued the nurse's statement suggested "there is a 95[%] likelihood that she was assaulted and then didn't show any injuries." The district court responded the inference came only from defense

counsel and is not what the nurse said in testimony. The State explained the comment was that generally 95% of people who report sexual assault have a normal physical exam showing no injuries. The court overruled the objection to the testimony, and Juste was told he would be able to pursue the issue on cross-examination.

On cross-examination, Juste questioned the nurse about her foundation for the statement. Argument again took place outside the presence of the jury, and Juste alleged there was no discovery related to the research the nurse relied on to make the statement. The court stated the nurse was an expert by the very nature of her qualifications as a nurse practitioner and her presence on the witness list put Juste on notice of that fact. Juste argued a production order required the State to produce any materials related to discovery. The State relied on the filed minutes of evidence and the nurse's deposition, in which she was asked about studies which were filed. The State argued there was no motion to produce filed for the reports or research and the State did not have any. The court stated:

> In this instance this is apparently how people who practice in this field conduct business. They read the reports of others. They rely upon their own bases of knowledge and then they reach conclusions as to what is probable, what is not probable, and assign in certain instances percentages of probability. You have every right to cross examine. And you have every right to place before the jury any questions that you have as to disagreement with her opinion. Now, does the State owe you an obligation to produce what it does not have? No, it does not. The State has indicated it did not have the witness's expert opinion on it. And if you deposed her and you did not fully explore what you could have explored, again, that is not the State's fault. So she has complied fully with the rules and again the 95[%] figure you apparently do take serious issue with. You can bring in an expert to say that the 95[%] figure is wrong. You're entitled to do that. But all you're doing is quibbling over her opinion. It doesn't stop the opinion from coming in.

Yvon Similca, a friend and colleague of Juste, testified to his knowledge of Juste in North Carolina and Iowa. Similca and Juste worked together in North Carolina and in Iowa. Similca also testified that he, his wife, and his child lived with Juste, P.L., and her child at the time some of the alleged abuse took place in Iowa. Similca testified he and Juste had similar work schedules and traveled in the same vehicle, along with Similca's wife, to and from work. During cross-examination, the State attempted to admit personnel records from the employer to which Similca's wife listed an address different from the address Similca alleged to share with Juste. Juste objected, arguing the document was an improper record for impeachment and was hearsay. The district court admitted the records for impeachment purposes only. Later, the State called one of the employer's supervisors to testify to the employer's development and maintenance of the records contained in the exhibit. Juste objected again. The objection was overruled, and the evidence was admitted.

A social worker with DHS was called to testify to her work with the child in the child-in-need-of-assistance (CINA) proceeding stemming from the alleged abuse. Juste objected to her testimony, arguing any reports created by the worker as a product of her interaction with the child should be produced in order to properly cross-examine the witness. The social worker indicated her submissions were a part of the CINA matter. The district court noted the late timing of the request for documents and recommended Juste attempt to secure any necessary records from P.L., who was a party to the CINA proceeding. Juste reminded the district court the social worker was called as a rebuttal witness and was not listed as a

witness either party expected to call in pre-trial filings.  The district court continued to allow the testimony.

During trial, the State moved to amend the trial information, which alleged the abuse occurred in January 2015, to allege the abuse occurred from September 2014 to January 2015.  The State argued the testimony provided at trial supported the extended time period and that no new offense was being charged.  The district court denied the motion, finding January 2015 was not a critical date but served to "place[] Mr. Juste on notice that this is the time frame that he is alleged to have committed this crime."  The district court stated it intended to give a jury instruction indicating a January 2015 charge date but that the date was not critical.  Juste moved for judgment of acquittal after the district court denied the State's motion to amend the trial information based on discrepancies in the timing of the abuse between different testifying witnesses.  The district court denied the motion, again stating the January 2015 charge date was not conclusive.

When the parties submitted jury instructions to the district court Juste objected to instruction twenty-four, which provided:

> The State alleges this event occurred in January 2015.  This is just a date to place a defendant on notice of the date a crime is alleged.  It is not critical to whether a crime did occur.
> If you find a crime did occur, it is not legally significant whether the event occurred in January 2015, December 2014, or any other date in proximity to January 2015.

Juste again insisted alleged instances of abuse prior to January 2015 and those that took place in North Carolina were separate offenses requiring separate charges.  Juste requested any language referencing those alleged instances to be removed from the instruction.  The district court denied the motion, finding the

language of instruction twenty-four was an accurate statement of the law, putting Juste on notice of the general time frame in which the alleged events took place.

The jury found Juste guilty of sexual abuse in the second degree in violation of Iowa Code section 709.3. Following entry of the verdict, Juste filed post-trial motions in arrest of judgment, for judgment of acquittal, and for a new trial. Juste argued insufficient evidence supported the verdict, specifically that acts alleged prior to January 2015 were outside of the acts alleged in the trial information, jury instruction twenty-four was improper, physical evidence from lab tests was improperly admitted over Juste's motion in limine, the nurse's testimony amounted to improper vouching for the child's credibility, the admitted employment records were hearsay and should have been excluded, and allegations stemming from conduct that took place in North Carolina admitted as character evidence should have been excluded. Juste argued the cumulative effect of the aforementioned issues resulted in a violation of his due process rights and required a new trial. Following a response from the State, the district court heard arguments on the motions at the sentencing hearing. Juste raised the same arguments made in his post-trial motions. The court found sufficient evidence supported the jury's verdict, and all motions were denied. Juste appeals.

## II.    Discussion

Juste raises five issues on appeal. We will discuss them in turn.[5]

---

[5] Juste raised constitutional arguments in all five brief headings contained in the appellate brief. However, with the possible exception of an argument regarding DHS records, no constitutional authority or other authority to support the alleged constitutional issues was provided. Our rules state a failure to cite supporting authority may result in waiver. Iowa R. App. P. 6.903(2)(3)(g). Accordingly, we

A. Vouching

Juste argues admitting the testimony of the nurse practitioner that 95% of victims who report sexual abuse have "normal" physical examinations was improper vouching for the credibility of the child. Evidentiary rulings are reviewed for an abuse of discretion. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). "When the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable, an abuse of discretion occurs." *Id.*

The State contests error preservation. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (citations omitted). The trial transcript reveals that Juste made a standing objection to the nurse's testimony prior to the statement at issue, listing two grounds—hearsay and "improper bolstering." However, the State correctly notes the objection to the 95% comment made at trial was targeted at the foundation supporting the testimony and argues the topic change renders the standing objection inapplicable to the 95% comment. As our supreme court has noted, although a "standing objection may save trial time and be convenient for both court and counsel, it makes appellate review infinitely more difficult and, for the litigants, more uncertain." *State v. Jeffs*, 246 N.W.2d 913, 916 (Iowa 1976). Thus, standing objections are not a favored trial practice. *Id.* But courts have engaged in error-preservation analyses based on standing objections in the past. *See id.* (reaching the merits of hearsay argument but noting sparse citations to the

---

deem the constitutional arguments waived, but we will address the argument regarding DHS records later in this opinion.

record in appellate briefs); *State v. Johnson*, 237 N.W.2d 819, 823 (Iowa 1976) (finding error was not preserved where testimony subject to sustained objection during voir dire was introduced again before the jury); *Bornn v. Madagan*, 414 N.W.2d 646, 648 (Iowa Ct. App. Aug. 26, 1987) (finding error was not preserved because no specific objections were made and because the type of objection was improper).

In this case, as the nurse answered questions regarding what the child told her during the physical exam, Juste objected on "the same" grounds—hearsay and bolstering.  Juste asked the court, "Could I just have a standing objection to this . . . or do you want me to object to every question?"  The district court answered, "If you prefer a standing objection, that is fine but it will be overruled." Based on this exchange, it appears the district court granted Juste's request for the standing objection and immediately overruled the objection.  Thus, the issue of the standing objection was raised and ruled upon by the district court, preserving error.  *See Meier*, 641 N.W.2d at 537.  Furthermore, we do not find the topic change from the specifics of the child's physical exam to the nurse's comment describing a normal exam troubling, as the standing objection appears to be targeted at any hearsay or statements tending to bolster the child's credibility.  The nurse's testimony describing the child's exam as "normal" and continuing to explain what "normal" means could be seen as statements bolstering the child's credibility. Therefore, we find error has been preserved.  *See id.*

Expert testimony vouching for, or bolstering, the credibility of a witness is inadmissible.  *Dudley*, 856 N.W.2d at 676.  Our supreme court has discussed expert testimony stating,

> [W]hen an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though the expert cannot accurately opine when a witness is telling the truth. In our system of justice, it is the jury's function to determine the credibility of a witness. An abuse of discretion occurs when a court allows such testimony.

*Id.* at 677. When expert testimony is alleged to bolster the credibility of a witness, our supreme court has parsed the statements made by a witness, in order to determine whether the individual statements cross the line to usurp the jury's credibility-finding function. *See id.* at 677–78 (evaluating testimony by both a treating therapist and forensic interviewer); *State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014) (finding one of four statements vouched for the child's credibility).

Our supreme court has found a therapist's testimony that a child's symptoms, physical and emotional, are consistent with a child who has suffered sexual abuse is vouching and is inadmissible. *Dudley*, 856 N.W.2d at 673, 677–78. A forensic interviewer's testimony that a child's "statements were consistent throughout the interview" was admissible, but a recommendation that the child receive therapy and stay away from the alleged perpetrator was inadmissible because it indirectly supported the child's allegation. *Id.* at 678. Testimony of a doctor who performed a child's physical examination was inadmissible when the statement indicated investigation of the child's abuse disclosure was "clearly warranted." *Brown*, 856 N.W.2d at 689.

The relevant statement in the case at bar is: "So many times when—for children who have or anyone actually for sexual abuse many times 95[%] or higher the results are normal as far as when we look at the genitalia . . . ." The statement at issue discusses children and adults who are alleged victims of sexual abuse

and provide a physical examination. The statement is not targeted at the complaining child in any way. This appears to be an explanation that an allegation of sexual abuse will not, in many cases, lead to a finding of physical trauma to a person's genitalia. Because the statement is general and merely explains that sexual abuse does not always lead to physical trauma of a person's genitalia, it does not vouch for the credibility of the child.

B.      Hearsay and Prior Consistent Statements

Juste argues the testimony of the guidance counselor and nurse and the contents of the child's survey are hearsay and should not have been admitted as prior consistent statements. "Rulings on the admissibility of hearsay evidence are reviewed for correction of errors at law." *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013).

Juste alleges the motive to fabricate the allegations against him arose when he, the child, P.L. moved from North Carolina to Iowa. Accordingly, Juste argues the motive to fabricate arose before the child disclosed the abuse meaning testimony regarding prior consistent statements is not admissible pursuant to Iowa Rule of Evidence 5.801(d)(1)(B). The State argues the statements and survey contents were also admitted for alternative purposes which were not challenged, rendering Juste's argument futile. The State also argues the child's own testimony during trial duplicated the evidence and thus no prejudice resulted.

The State argues error was not preserved as to statements made by the nurse, alleging Juste made no objection to the testimony. The record shows Juste objected to the question "And why did [the child] tell you [the child] was at the center that day?" on both bolstering and hearsay grounds. Juste also made a

standing objection when the nurse was asked who the child was referring to in the survey with the phrase "my dad."  Both objections were overruled.  Accordingly, error has been preserved.  *See Meier*, 641 N.W.2d at 537.

Hearsay is a statement "(1) The declarant does not make while testifying at the current trial or hearing; and (2) A party offers into evidence to prove the truth of the matter asserted in the statement."  Iowa R. Evid. 5.801(c).  Hearsay is generally inadmissible, with limited exceptions.  Iowa R. Evid. 5.802.  A declarant-witness's prior statement is not considered hearsay if

> [t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . [i]s consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.

Iowa R. Evid. 5.801(d)(1)(B).  Our supreme court adopted the rule "that a witness's prior consistent statement is admissible as nonhearsay to rebut a charge of recent improper motive under Iowa rule of evidence 801(d)(1)(B) *only if* the statement was made before the alleged improper motive to fabricate arose."  *State v. Johnson*, 539 N.W.2d 160, 165 (Iowa 1995) (adopting the United States Supreme Court's interpretation of Federal Rule of Evidence 801(d)(1)(B) as pronounced in *Tome v. United States*, 513 U.S. 150, 115 (1995)).  This interpretation of rule 5.801(d)(1)(B) is a "bright-line rule regarding admissibility based on timing of the prior consistent statement."  *Id.*

The record indicates the child's alleged motive to fabricate arose at the time P.L. removed the child from the state of North Carolina and took up residence in Iowa.  The move occurred in August 2014.  The allegation was made in January 2015.  Juste argues the child concocted the allegation because the child was

removed from North Carolina and denied access to family members still residing in that state.  Applying the bright-line rule adopted in *Johnson*, the statements of the counselor, the nurse, and the survey were made after the motive to fabricate the allegations arose and are thus inadmissible.  *See id.*

Turning to the State's argument, we now consider whether the wrongfully-admitted hearsay was prejudicial.  *See State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) (following examination of inadmissible hearsay statements pursuant to rule 5.803(1) with a harmless-error examination).  Appellate courts examine the record for an appearance that "the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice."  *Id.* (quoting *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004)).  Prejudice is presumed "unless the record affirmatively establishes" no prejudice resulted.  *Id.* (quoting *Sullivan*, 679 N.W.2d at 30).  When the evidence of a defendant's guilt is overwhelming there is no prejudice.  *Id.*  Furthermore, our supreme court has held "erroneously admitted hearsay will not be considered prejudicial if substantially the same evidence is properly in the record."  *Id.*

The State alleges the child's statements in the survey were admitted as the method of the child's disclosure to the school and to explain the counselor's conduct following the child's disclosure.  The State also alleges the counselor's statements regarding the child's disclosure were admitted to explain the involvement of DHS and the child's participation in the forensic interview and physical examination.  The State further alleges the nurse's statements regarding the child's allegations were admitted as statements for medical diagnosis and were necessary to evaluate, diagnose, and recommend treatment for the child.  Finally,

the State alleges all of the inadmissible hearsay was not prejudicial because it was merely duplicative of the child's own testimony given in trial and subject to cross-examination.

During in camera testimony, the child testified the survey was a fair and accurate representation of the form the child used to disclose the abuse. The child confirmed the answers originally provided and shown on the survey. The child also testified to each of the statements duplicated by the counselor and nurse. Furthermore, Juste played the video recording of the child's forensic interview as a part of cross-examination, during which the child made the same allegations against Juste. Because the testimony in dispute was also admitted in the child's testimony at trial and is properly a part of the record, Juste suffered no prejudice by the district court admitting the statements of the counselor or nurse and the survey. *See Id.*

    C.    Jury Instruction Twenty-Four

Juste argues the district court erred in submitting jury instruction twenty-four, which he alleges effectively granted the State's motion to amend the trial information to include allegations of assaults that took place prior to January 2015. The State argues the district court correctly instructed the jury that the date of the alleged sexual abuse is not an element of the crime.

Challenged jury instructions are reviewed for correction of errors at law. *State v. Hanes*, 790 N.W.2d 545, 548 (Iowa 2010). Courts review an instruction for accurate statements of law and substantial evidence. *Id.* Reversal is warranted only if the party challenging the instruction has suffered prejudice. *Id.*

The exact timing of conduct meeting the requirements of incest or statutory rape is not a material element of the crime. *State v. Griffin*, 386 N.W.2d 529, 532 (Iowa Ct. App. 1986). The State need not "prove the precise time and place" of sex crimes including incest and statutory rape. *State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003). Our supreme court has noted the inherent difficulty in doing so in child-abuse cases specifically because of "the frequent delay in the discovery of the abuse, as well as other factors based on the nature of the crime." *Id.* at 550–51.

This court faced a similar jury-instruction issue in *State v. Cain*. *See* No. 14-1506, 2015 WL 5285763, at *2–3 (Iowa Ct. App. Sept. 10, 2015). In *Cain*, the jury instruction stated the assault took place "'on or about' January 20, 2013." *Id.* at *2. When the jury requested clarification of the timing language of the instruction, the court issued a supplemental instruction:

> When a charging instrument charges a specific date . . . that does not require that the State prove that the event occurred on that specific date. It is simply a device by which it alerts an individual to a particular event and if you find that the State has met its burden, but you're unable to say whether it occurred on a specific date, if it occurred in a one or two-month time period on either side of that date, that is sufficient. It is the event and not the date that controls.

*Id.* The supplemental instruction in *Cain* comports with our supreme court's analysis of similar-timing challenges in other cases. *See State v. Rankin*, 181 N.W.2d 169, 170 (Iowa 1970) (finding "the trial court did not err in failing to require the state to elect a date certain"). *Griffin*, 386 N.W.2d at 532–33 (finding the defendant was sufficiently notified of the specific alleged acts, identify of the complainant, and timeframe in which the acts allegedly took place to be able to defend against the charge).

In the case at bar, the child's testimony identified the victim of Juste's alleged conduct, the conduct giving rise to the allegation, and a timeframe in which the conduct took place. Juste argues the timeframe has not been sufficiently identified because the child initially alleged the conduct took place in January 2015 and testified to not remembering anything occurring in January 2015. We disagree. The child testified the conduct occurred on more than one occasion in the months between the child's relocation to Iowa[6] and the forensic interview in January 2015, a mere five months. Accordingly, we find the instruction correctly stated the law and gave sufficient information to allow Juste to defend against the abuse allegations. Thus, the district court did not err in submitting jury instruction twenty-four to the jury.[7]

D.    DHS Records

Juste claims the district court erred in denying his access to undisclosed and sealed DHS records upon which DHS worker relied on for her testimony. Juste's claim is based upon an alleged violation of procedures pursuant to the Jencks Act, which would give Juste access to certain records created by the

---

[6] Prior to moving to Iowa, Juste, P.L., and the child relocated several times within the same local area in North Carolina. The child testified to the location of the home where the alleged abuse took place, distinguishing a period of time in which it took place.

[7] Juste argues the district court erred in denying his motions for judgment of acquittal and new trial because the physical evidence is alleged to establish the date of the alleged conduct as January 2015, which he argues is not reflected in the language of jury instruction twenty-four. In his argument on the motion, Juste cites only to *State v. Willet*, 305 N.W.2d 454, 457 (Iowa 1981), arguing "the offense must be proved to have been committed in the way charged." Because jury instruction twenty-four correctly stated the law pursuant to Iowa Code section 709.3, which does not require a specific date as a material element of the crime, we need not reach this argument. *See* Iowa Code § 709.3.

testifying witness. *See* 18 U.S.C. § 3500(b); *Jencks v. United States*, 353 U.S. 657, 672 (1957); *see also State v. Horn*, 282 N.W.2d 717, 721 (Iowa 1979) (describing the types of records admissible following our supreme court's approval of the procedures). However, the trial transcript reveals Juste's objection invoked "*James*." Juste argues on appeal that the transcript reflects an inaccurate transcription and he in fact invoked "*Jencks*."

When Juste objected to the social worker's testimony and sought access to DHS records, Juste merely indicated his reliance on "*James*." No case citation was ever provided, nor even a brief reference to the substance of the *Jencks* case. In fact, no reference to the objection was made in Juste's post-trial motion at all. "It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon." *In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005). Our review of the record discloses no effort on Juste's part to alert the district court to the authority on which the objection rested. In light of Juste's failure to direct the district court to any authority supporting the objection, we decline to further consider this issue. *See id.* at 136.

We now turn to Juste's argument his right to confront witnesses against him guaranteed by the Sixth Amendment has been violated. In his brief, Juste cited only one confrontation-clause case, *United States v. Owens*, 484 U.S. 554 (1988). While *Owens* does discuss the confrontation clause, it does not relate to document production in order to ensure a defendant has an adequate opportunity to engage in cross-examination. *See* 484 U.S. at 557–61. The issue with the relevant witness in *Owens* is the witness's memory. *Id.* Thus, Juste has pointed us to no authority supporting his contention his right to confront the witness was violated by

the district court's failure to order the State to deliver the requested DHS documents. Appellants are required to cite to authority supporting arguments on appeal, and failure to do so may result in waiver of an issue. Iowa R. App. P. 6.903(2)(g)(3). Because Juste's reliance on *Owens* is inapposite, we deem the argument waived. *Id.*

E.      Employment Records

The challenged evidence is a set of employment records, including forms allegedly completed by Similca's wife. Similca testified that he, his wife, and their child resided with Juste during some of the times of the alleged abuse. The forms allegedly completed by Similca's wife, provide a different address for Similca's family during the relevant period. Juste contests the admission of the records as hearsay and contends the hearsay statements were the basis for improper impeachment of Similca. The State argues the records were properly admitted and, if admission was in error, there was no prejudice to Juste. Again, hearsay rulings are reviewed for errors at law. *Thompson*, 836 N.W.2d at 476.

The State contests error preservation to the timecard and termination form contained in the records. The record shows the parties stipulated to the entry of the timecards. Thus, no objection was made to the timecards. Because no issue was raised to the district court regarding the timecard, error has not been preserved on those pages. *See Meier*, 641 N.W.2d at 537.

The State contends the records were admissible to impeach Similca. A witness's credibility may be attacked by any party. Iowa R. Evid. 5.607. Evidence will be admitted to impeach a witness if it is (1) "relevant to some legitimate issue in the case" or (2) "relevant to establishing or undermining the general credibility

of the witness being impeached." *State v. Turecek*, 456 N.W.2d 219, 224 (Iowa 1990) (quoting *State v. Roth*, 403 N.W.2d 762, 767 (Iowa 1987)). Evidence regarding the general credibility of a witness may relate to "bias, peculiar skills, or relevant knowledge or which go to a specific testimonial quality." *Id.*

Similca testified on direct examination that he and his family shared a home with Juste, P.L., and the child during the time the child was allegedly assaulted. The employment records indicate Similca and his family did not share a residential address with Juste, P.L., and the child. The evidence contained in the records relates to Similca's honesty and may have been relevant to the jury's consideration of his testimony. Accordingly, the testimony was admissible to impeach Similca because it related to a specific testimonial quality. *See id.*

We now turn to the hearsay argument. It appears from the record that the documents were admitted as business records. In order for documents to be admitted as evidence pursuant to the business-records exception to the rule against hearsay, a foundation must establish:

> (1) That it is a business record;
> (2) That it was made at or near the time of an act;
> (3) That it was made by, or information transmitted by, a person with knowledge;
> (4) That it was kept in the course of a regularly conducted business activity;
> (5) That it was the regular practice of that business activity to make such a business record.

*State v. Reynolds*, 746 N.W.2d 837, 841 (Iowa 2008) (quoting *Beachel v. Long*, 420 N.W.2d 482, 484 (Iowa Ct. App. 1988)). The supervisor's testimony established the documents, including but not limited to the employment application of Similca's wife, were comprised partially of forms originally created by the

employer to be completed by employees or persons seeking employment. The testimony also established her position as a hiring manager, that the records are created at the time of specific events, that the records are kept in the course of regularly conducted business activities, and that the employer regularly keeps such records. However, the supervisor was not able to testify to any knowledge that Similca's wife actually completed the employment application listing the couple's address.

Even assuming Similca's wife did provide the information, her statements were not made by the employer and are therefore also hearsay statements. *See Union Story Tr. & Savs. Bank v. Sayer*, 332 N.W.2d 316, 321 (Iowa 1983) (stating declarant was person signing a check not a bank maintaining microfilmed check copies, making declarant's statements "double hearsay"). "A party must establish the applicability of an exception to the hearsay rule authorizing the admission of third-party hearsay statements contained in a business record." *Reynolds*, 746 N.W.2d at 842. The State argues that when "both the source and recorder of the information [are] acting in the regular course of the organization's business . . . the hearsay upon hearsay problem may be excused by the business records exception." *United States v. Turner*, 189 F.3d 712, 720 (8th Cir. 1999).

The Iowa Rules of Evidence recognize that multi-level hearsay statements may be admissible if an exception to the rule against hearsay applies to each hearsay statement. Iowa R. Evid. 5.805. However, it does not appear Iowa has adopted the same interpretation of the business-records exception described by the Eighth Circuit in *Turner*. *See* 189 F.3d at 720. Accordingly, because there was no foundation for the identity of the declarant of statements provided in the

employment application, alleged to be statements of Similca's wife, we cannot say the statements fulfill the requirements of the business-records exception to the rule against hearsay. *See Reynolds*, 746 N.W.2d at 841. No other argument has been made for the admissibility of the statements on appeal. Accordingly, the statements allegedly made by Similca's wife contained in the documents are inadmissible hearsay.

The State finally argues no prejudice resulted in admitting the allegedly hearsay statements contained in the exhibit. Although hearsay is generally inadmissible and wrongful admission will result in a presumption of prejudice, no presumption will arise if the inadmissible hearsay statements are already properly admitted to the record. *Newell*, 710 N.W.2d 19. Juste failed to object to the timecards contained in the documents, in fact, the record shows there was a stipulation to that document. The timecard lists the same address as the employment application in the records. Accordingly, because the timecard was a stipulated part of the record and contains the same information as the improperly admitted hearsay on the employment application, no prejudice has resulted.

## III.    Conclusion

We affirm Juste's conviction of sexual abuse in the second degree.

**AFFIRMED.**